QUATRAY v. WICKER ET AL.

(April 27, 1931.   Opinion and Decree.)

516

Gasper Bossetta and M. C. Scharff, of New Orleans, attorneys for plaintiff, appellant, appellee.

Milner & Porteous and P. M. Milner, of New Orleans, attorneys for defendant, appellee Marchesseau.

Wm. H. Talbot, of New Orleans, attorney for M. Wicker, defendant, appellant.

HIGGINS, J. Dominick Quatray, individually and in behalf of his minor son, Austin Quatray, sued Michel Wicker and Harry F. Marchesseau in solido to recover medical expenses for his own account and damages for personal injuries and loss of wages in behalf of his son, claimed to have been sustained as a result of an automobile collision near the intersection of London avenue and Gentilly road, this city, on October 14, 1929, at 9:15 a. m.

The petition alleges that the accident was caused through the joint and concurrent negligence of Wicker and Marchesseau.

Wicker, through his minor son who was driving his truck, is charged with being at fault in the following respects:

"(1) In driving across Gentilly road without stopping as required by the traffic ordinance of the city of New Orleans; (2) in driving across the highway at a high rate of speed; and (3) in not keeping a proper lookout."

Marchesseau's negligence is said to have consisted of the following acts of commission and omission: (1) Operating his car at an excessive rate of speed in violation of the traffic ordinance; (2) in failing to keep his car under proper control; (3) in not keeping a proper lookout, particularly when his view of the highway was obstructed.

Wicker denied liability averring that the negligence of Marchesseau in operating his car at a reckless rate of speed without maintaining a proper lookout and in failing to keep his car under control were the sole and proximate causes of the accident. He admitted, however, that his truck crossed without stopping as required by the traffic ordinance. He further specially pleaded assumption of risk by the injured boy and also that the young man was guilty of contributory negligence.

Marchesseau answered denying liability and alleging that Wicker was solely at fault in causing the accident because his son drove from an obscure place across the highway at a fast rate of speed without stopping, in violation of the city ordinance; that the injured boy assumed the risk, as he knew that Wicker's son was a fast driver; that Wicker, Jr., was tried and convicted in the criminal district court under the State Highway Traffic Act for operating his truck in a reckless and careless manner and causing personal injury; and that he (Marchesseau) was acquitted on the same charge.

There was judgment in favor of Dominick Quatray against Michel Wicker in the sum of $294 for medical expenses, and in favor of Austin Quatray against Wicker in the sum of $2,000, $1,500 for his injuries and $500 for loss of wages. Plaintiff's suit was dismissed as to Marchesseau. Plaintiff

and Wicker have both appealed, and plaintiff further answered the appeal and asks that the award of damages for personal injuries be increased.

From the record we gather the following to be the facts of the case as were substantially alleged in the petition:

Austin Quatray, age 18, was employed at Duke's Service Station at a weekly wage of $15. The station is situated on the lake side of Gentilly road at the intersection of London avenue. On the morning of the accident Michel Wicker and his minor son, who was driving his father's National three-fourths ton truck, stopped at the service station and requested that an employee be permitted to go on the truck in order that it might be returned for the purpose of having it greased. Austin Quatray boarded the truck, which drove off while he was on the running board and climbing over the side to get into the body of the truck where he seated himself on some milk cases. The truck was driven at a 45-degree angle in the direction of Chef Menteur or away from the city from the garage, which is located about 75 feet back from Gentilly road. Young Wicker drove the truck at about fifteen miles per hour, and, without stopping, crossed the roadway at a point about 15 feet from the end of the London avenue canal bridge, which is located 142 feet from the garage. This bridge is about 107 feet in length, Gentilly road on both sides of the bridge has a slight curve in it, and London avenue intersects Gentilly road on the New Orleans side of the bridge. The defendant Marchesseau was driving a Buick sedan towards the city of New Orleans on the right-hand side of the Gentilly road. Due to the fact that the bridge is elevated and the approach from both sides is on an in-

cline and further on account of the concrete balustrades and railings on the bridge, as well as weeds which have grown up adjacent to it, the views of the drivers of both machines were obstructed from seeing each other until the Buick was on the bridge and the truck was about to enter the asphalt portion of Gentilly road. The machines collided 15 feet from the New Orleans end of the bridge; the extreme left side of the Buick striking the left side of the truck just back of the cabin where the driver was seated, causing both cars to be thrown to their respective right sides of the road.

The truck came to rest on the bridge, with its rear end adjacent to the city side of the bridge. The Buick stopped about 40 feet from the point of collision. Austin Quatray was found on the lake side of Gentilly road near the end of the bridge where the cars collided and at the foot of a small levee which comes up to the balustrade of the bridge on the lake side. He was unconscious and badly injured, and was taken to the hospital for treatment.

Plaintiff clearly proved that Wicker's son, who was driving the truck, was at fault in failing to stop his car as required by the Traffic Ordinance 7490, C. C. S., and in driving across Gentilly road, a public highway, at 15 miles per hour without keeping a proper lookout. He was guilty of gross carelessness and negligence.

The next question is whether Marchesseau was guilty of negligence that contributed to the accident. He states that he was driving his car at a rate of speed of about 25 miles per hour, on the right-hand side of the road going in the direction of New Orleans; that he first noticed the Wicker truck when he was about the mid-

dle of the bridge and the truck's front wheels were about to come upon the asphalt portion of Gentilly road; that he was unable to turn on account of being on the bridge, and, as he came to the New Orleans end of the bridge, he attempted to swerve to the right and at the same time applied his brakes, causing his car to skid so that the left rear side of it struck the truck as above described; that the truck was crossing the road at an angle about 15 feet from the New Orleans end of the bridge; that his view of the truck was obstructed, due to the fact that there is a declivity in the road on account of the bridge being elevated and the approaches to it being on an incline and also because of the weeds and the concrete balustrades of the bridge.

Wicker, Jr., testified that in his opinion the Buick car was going about 40 miles per hour.

Gentilly road is a portion of the Louisiana highway system, forming a part of route No. 61 under the provisions of Act No. 294 of 1928.

Section 5, "Restrictions on Speed," subsec. (a) of Act No. 296 of 1928, reads as follows:

"Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing, and no person shall drive any vehicle upon a highway at such speed as to endanger the life, limb or property of any person."

Subsection (b) of section 5 of the same act provides:

"Subject to the provision (a) of this section and except in those instances where a lower speed is specified in this Act, it shall be prima facie lawful for the driver of a vehicle to drive at a speed not exceeding the following, but in any case when such speed would be unsafe it shall not be lawful."

Paragraph 3 of subsection (b) of the same section provides:

"Fifteen miles an hour when approaching within fifty feet and in traversing an intersection of highways when the driver's view is obstructed. A driver's view shall be deemed to be obstructed when at any time during the last fifty feet of his approach to intersection, he does not have a clear and uninterrupted view of such intersection and of the traffic upon all of the highways entering such intersection for a distance of two hundred feet from such intersection."

Subsection (c) of the same section reads as follows:

"Local authorities in their respective jurisdictions are hereby authorized in their discretion to increase the speed which shall be prima facie lawful upon through highways at the entrances to which vehicles are by ordinance of such local authorities required to stop before entering or crossing such through highways."

Section 29 of the act reads as follows:

"The driver of a motor vehicle traversing defiles, hills or hilly highways shall hold such motor vehicle under control and as near the right-hand side of the highway as reasonably possible and upon approaching any curve where the view is obstructed within a distance of two hundred feet along the highway shall give audible warning with a horn or other warning device."

Article 2, paragraph B, of Ordinance 7490, C. C. S., known as the Traffic Ordinance, reads as follows:

"All vehicles when crossing any bridge will not exceed a speed greater than eight miles per hour while crossing."

It would therefore appear to us that, according to Marchesseau's own statement, he violated the provisions of both the traffic ordinance and the state highway traffic statute, and was therefore guilty of negligence which contributed to the accident.

This court has held that a driver is guilty of negligence in operating his car at such a rate of speed that he is unable to stop within a range of his vision. Parlongue v. Leon, 6 La. App. 18; Raziano v. Trauth, 15 La. App. 650, 131 So. 212; Pepper v. Walsworth, 6 La. App. 610; Southall v. Smith, 151 La. 967, 92 So. 402, and 27 A. L. R. 1194.

We further observe, with reference to the negligence of Marchesseau, that he stated that, when he was in the middle of the bridge, he first observed that the truck was going to cross his path. The length of the bridge is 107 feet. The truck, according to Marchesseau's testimony, attempted to cross 15 feet from the New Orleans end of the bridge and, therefore, Marchesseau would have had 68½ feet within which to have stopped his car if he had applied his brakes. He testified that his car was equipped with four-wheel brakes. Therefore, if they had been applied at the time he first saw the truck, he would have been able to stop in order to have avoided the accident.

It has been held that, where a driver of an automobile has created a dangerous situation, he will not be heard to excuse himself on the plea that, owing to that condition, he could not avoid the accident. Dill v. Colley, 3 La. App. 305; Stout v. Lewis, 11 La. App. 503, 123 So. 346, 348. Youman v. McConnell, 7 La. App. 315; Thornhill v. Yellow Cab Co., 6 La. App. 787.

We have come to the conclusion that the accident was caused through the joint and concurrent negligence of the drivers of both machines, and therefore defendants are liable in solido, unless the special defenses or errors complained of are well founded.

We shall now take up the special pleas.

We are of the opinion that defendant Marchesseau's special plea of assumption of risk and contributory negligence by the injured boy in climbing from the running board into the body of the truck and seating himself on the milk cases while the truck was in motion is without merit. In Stout v. Lewis, supra, we said:

"It is not sufficient to say that he would not have been hurt, if he had not been on the running board, because he might have remained upon the running board until he had reached his destination without injury, but for the negligent management of the car, on the running board of which he was riding; a risk which he did not assume."

See, also, Hogan v. New Orleans Public Service, 16 La. App. 637, 131 So. 756.

Counsel for Wicker complains of the ruling of the trial court in excluding evidence, which was timely objected to, and offered for the purpose of tending to show that the injured boy was guilty of contributory negligence because he knew that the driver of the truck, Michel Wicker, Jr., was a fast driver. This evidence was excluded by the trial court on the ground that a mere allegation in the answer that the plaintiff's son was guilty of contributory negligence is simply a conclusion of law, and that, in order to properly plead contributory negligence, it is necessary to set up such facts relied upon as constituting contributory negligence.

The defendant Wicker in his answer merely alleges:

"Further answering, your respondent pleads contributory negligence in the event it is found that the driver of the Wicker truck was in any way guilty of negligence, which is specially denied."

We are of the opinion that the trial court's ruling is correct. Vidrine v. Evangeline Gravel Co., 6 La. App. 468; Frierson v. Shreveport Grocery Co., 3 La. App. 44; Breen v. Walters, 150 La. 578, 91 So. 50.

The defendant Marchesseau avers in his answer that Wicker, Jr., was convicted of reckless driving and causing personal injury under the state highway traffic statute (Act No. 296 of 1928) in the criminal district court and that he (Marchesseau) was acquitted of the same charge. Statements to this effect were admitted without objection. It is argued that the conviction and acquittal in criminal cases should be considered as evidence by us. The whole question is discussed in Interstate Dry Goods Stores v. Williamson, 91 W. Va. 156, 112 S. E. 301, 31 A. L. R. 261, in which appear many cases maintaining the doctrine that evidence of prior conviction or acquittal is inadmissible in a civil suit.

See Stone v. U. S., 167 U. S. 178, on page 184, 17 S. Ct. 778, 780, 42 L. Ed. 127, in which the Supreme Court said:

"In our opinion, the record of the criminal proceedings in the court in Idaho was not evidence to establish or disprove any of the material facts involved in the civil action."

In 3 Orl. App., page 356, Lennon v. Palmer Co., on page 359, this court, in commenting on the action of the trial judge in refusing to admit, in a civil damage suit, evidence showing an acquittal in a criminal court, and in refusing to admit the introduction of evidence adduced in the criminal trial, said:

"Both rulings are correct; the prosecution was by the City and the present plaintiff had no power to cross examine the witness, and the judgment of a criminal court has no effect on a civil court, which is charged with the duty and power to determine for itself all the issues arising in a civil suit."

In Jones' Commentaries on Evidence, sec. 1816, is found the following:

"Although the same fact may be involved in two cases, one civil and the other criminal, the parties are necessarily different, for one action is prosecuted by the individual, the other by the State. Accordingly, by the weight of authority, the judgment in one case is not generally admissible in the other to establish the facts on which it is based."

See, also, Steel v. Cazeaux, 8 Mart. (O. S.) 318, 13 Am. Dec. 288; Lewis v. Petayvin, 4 Mart. (N. S.) 4; Pober v. Sterbcow, 14 Orl. App. 164; New Orleans Ry. & Light Co. v. U. S. Fidelity & Guarantee Co., 145 La. 364, 82 So. 372.

The only case in this state that we have been able to find that supports defendant's contention is Bankston v. Folks, 38 La. Ann. 267, in which it was held that the verdict in a criminal case was admissible in a civil case but not binding on the civil court. This decision is not in accord with the other cases, supra.

We hold that the conviction or acquittal in a criminal case growing out of the same matter or transaction which gives rise to a civil case is not evidence and should not be admitted by the court in a civil case.

As to the quantum, the doctor who treated the injured boy stated that he suf-

fered a lateral fracture of both clavicles, severe laceration of the tongue, severe brush burns and contusions, a contusion and injury to the chest; that he had fever for several days and was threatened with pneumonia; that he was confined to the hospital for forty-one days and was treated several times after returning home; that he sustained severe shock and suffered a great deal of pain; and that there was some nerve injury.

Austin Quatray stated that he had an injury to his little finger and that one-half of the center fingers of both hands were somewhat calloused, and he still feels the effect of the injury, the nerves being dead, and that, although he was treated at the hospital for these injuries, these fingers are numb. He was incapacitated for nine months.

The trial court allowed the sum of $1,500 for pain, suffering and injury. We believe this amount reasonable and fair. The court also allowed the sum of $500 for loss of wages and $294 for medical expenses. We believe that these items were adequately proven.

For the reasons herein assigned, it is ordered that the judgment appealed from in favor of defendant Harry F. Marchesseau and against plaintiff, Dominick Quatray, dismissing plaintiff's suit be reversed, and it is now ordered that there be judgment in favor of plaintiff, Dominick Quatray, in his individual capacity in the sum of $294 and as representative of his minor son, Austin Quatray, in the sum of $2,000, and condemning Harry F. Marchesseau together with the co-defendant Michel Wicker in solido, and in all other respects the judgment is affirmed. Defendant to pay all costs.