For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.

### McDONALD et al. v. STELLWAGON et al.*
### No. 4093.

Court of Appeal of Louisiana. Second Circuit.
March 16, 1932.

*Rehearing denied May 4, 1932.

Thornton, Gist & Richey and Leo Gold, all of Alexandria, and Hugh M. Wilkinson, of New Orleans, for appellants.

Hawthorn, Stafford & Pitts, of Alexandria, for appellees.

DREW, J.

These two suits arose out of the same automobile accident. The defendants are the same in both cases, and the issues are identical, with the exception of the quantum of damages.

The plaintiff, John H. McDonald, sued individually and as natural tutor of his minor son, Gordon McDonald, making defendants R. B. Stellwagon, a resident of Rapides parish, La.; J. H. Gilbert, a resident of the state of Missouri; and the St. Louis Independent Packing Company, a Missouri corporation, domiciled at St. Louis, Mo.

He asks for damages of said defendants in solido for the personal injuries sustained by his minor son, and the expense of doctor's, hospital, and medical service occasioned by an automobile collision at the intersection of Sixth and Beauregard streets, in the city of Alexandria. One car is alleged to have been driven by R. B. Stellwagon, and the other by J. H. Gilbert, an employee of the third defendant, St. Louis Independent Packing Company, who, it is alleged, was responsible for the acts of negligence of its employee.

Plaintiff Ottis M. McConnell and his wife sued the same defendants to recover damages for the death of their minor son, Ottis M. McConnell, Jr., who was killed in the same accident.

It is alleged by plaintiffs and admitted by defendants that R. B. Stellwagon was at the time of the accident the chief scout executive of the Boy Scouts of America for the city of Alexandria and surrounding parishes, and in that capacity he had full charge and control of the members of that organization in Alexandria, as respects the work of the Boy Scouts.

On the day before the accident, the mayor of Alexandria arranged with Stellwagon for him to have a number of boy scouts present in the business district of Alexandria the next morning at 10 o'clock, for the purpose of directing traffic during the funeral of a local police officer, which was to take place at that hour. Stellwagon secured a number of the boy scouts, including the two unfortunate youths, Gordon McDonald and Ottis McConnell, and arranged with them to pick them up at the Bolton High School the following morning. For some reason, the hour of the funeral was changed from 10 to an earlier hour, which change Stellwagon did not learn until about the hour of the funeral. Therefore, he hurriedly drove his five-passenger Pontiac coach to Bolton High School; picked up some of the boys at or near the school, and proceeded on back through the residential district. When he arrived in front of the St. James Church, he had in the car three boys on the back seat, one on the front seat, and one on each of the front fenders, with one leg over the front lights. At this point he picked up James Bell and Gordon McDonald, Bell getting in the front seat and McDonald standing on the running board; and, when about one block away from the church, he picked up Ottis McConnell, who took his place on the running board opposite to Gordon McDonald.

At that time the car was loaded in the following manner; three on the back seat; three on the front seat; one on each front fender, with a leg around the headlight, and Ottis McConnell standing on the left running board, holding onto the upright between the front and back window; and Gordon McDonald, on the right running board, holding on in the same manner.

With his car thus loaded, defendant Stellwagon proceeded on towards his destination. When he reached the intersection of Sixth street with Beauregard, his car and the car driven by defendant Gilbert, who had approached Beauregard via Sixth street, collided. Stellwagon was going east and Gilbert was traveling north. In the collision, Gordon McDonald was seriously injured and Ottis McConnell was killed.

Plaintiffs contend that both Stellwagon and Gilbert were guilty of gross negligence, proximately contributing to the collision and resulting in injuries and death, and that they are liable in solido, together with Gilbert's employer, St. Louis Independent Packing Company.

Service was had on the nonresident defendants, viz., Gilbert and St. Louis Independent Packing Company, by service of process on the secretary of state, under provisions of Act No. 86 of 1928. Both of these defendants filed pleas to the jurisdiction of the court, which were overruled. They then filed exceptions to the citation, which were overruled, and also exceptions of no cause of action, which were likewise overruled. All defendants then answered denying negligence, Stellwagon alleging negligence on the part of the other two defendants, and they alleging negligence on the part of Stellwagon. St. Louis Independent Packing Company and Gilbert denied liability of the packing company for the acts of negligence of Gilbert. All defendants specially pleaded contributory negligence on the part of Gordon McDonald and Ottis McConnell in riding on the running board of the car, and alleged that they so rode of their own volition.

Judgment was rendered by the lower court in favor of J. H. McDonald, individually, in the sum of $3,590.80, and for the use and benefit of his minor son, Gordon McDonald, in the sum of $7,000; and in favor of Ottis M. McConnell and wife for the death of their minor son, in the sum of $10,000, to be equally divided between them; and in favor of Ottis M. McConnell, individually, in the sum of $213, for funeral expenses. These judgments were rendered against J. H. Gilbert and R. B. Stellwagon, and all demands against the St. Louis Independent Packing Company were rejected. From these judgments, the plaintiffs and the defendant Gilbert appealed; the plaintiffs praying that the defendant St. Louis Independent Packing Company be held liable, and also for an increase in the amount of the award. Defendant Gilbert complains that he is aggrieved by the judgment of the lower court, and is not liable in any amount. Defendant Stellwagon answered the appeal, praying that the packing company be held liable with Gilbert, and that he be held not liable in any amount; and, in the alternative, that the amount of the award be decreased. The packing company did not appeal, neither did it answer the appeal. Therefore, its exceptions to the citation, no cause of action, and plea to the jurisdiction are not before us for decision. Defendant Gilbert has not presented his plea to the jurisdiction and exceptions in argument or brief, and we therefore consider them abandoned.

The acts of negligence charged to defendant Gilbert by plaintiffs are that he failed to stop or slow down before entering the intersection of Sixth and Beauregard · streets, Beauregard being a right of way street; that he failed to look and see and to maintain a proper lookout; and that he failed to stop at the intersection. They alleged the packing company to be liable as the employer of Gilbert, a traveling salesman, who at the time was driving his car in connection with the duties of his employer, and acting within the scope of his employment.

The acts of negligence charged to defendant Stellwagon by plaintiffs are that he was driving at a dangerous and excessive rate of speed, greatly in excess of the speed limit fixed by city ordinance of Alexandria; and in failing to keep a proper lookout, coupled with his want of foresight and proper care in taking the two unfortunate youths on the running board of his car.

The cases were not consolidated for trial in the lower court. The McDonald case was first tried and the McConnell case was then submitted on a statement of facts, with an agreement for it to be tried on the same evidence offered in the McDonald case, with the exception of certain medical testimony that was not pertinent to the McConnell case. The cases were consolidated for trial in this court, presented and submitted to the court upon the record as made up by agreement, as above stated.

Defendant Gilbert was traveling north on Sixth street, intending to cross Beauregard and continue up Sixth. On the southwest corner of the intersection of Sixth and Beauregard is located a filling station, placed slightly back from the street, with an open shed in front; and, on the southeast corner, is a house. The view, on nearing the intersection from the south, is more open, looking west, than it is looking east, due to the arrangement of the filling station. Sixth street and Beauregard street are each 33 feet wide, making the intersection 33 feet square. One block west of Sixth and Beauregard is Sev-

enth street; then Eighth. The length of the block from Sixth to Seventh is 233 feet, and the same distance from Seventh to Eighth.

When Gilbert was first seen coming up Sixth street, he was traveling at a speed of about twelve miles per hour, and, as he approached the intersection, he slowed his car to a speed of from three to four miles per hour, and was watching for traffic. And it is undisputed that when he was about the property line, some 10 to 15 feet from the intersection, he looked to the west (the direction from which Stellwagon came), then looked to the east, put his car in low gear, and attempted to cross the intersection. When he had proceeded about 10 feet into the intersection, he saw Stellwagon's car traveling very fast and practically on him. He attempted to turn to the right, and partially succeeded, when the cars collided.

The cars came together about the middle of the intersection in the east end of it. This fact is corroborated by all the testimony. That Gilbert was traveling on his right side of the street and Stellwagon was traveling about the center of the street. Gilbert necessarily entered the intersection on the east end, and, in attempting to turn to the right, threw his car wheels farther to the east. Stellwagon's car did not change its course, but continued straight down the middle of the street.

At the time of the accident, Gilbert was traveling about five miles per hour and Stellwagon was traveling at the minimum speed of thirty-five miles per hour, or seven times as fast as Gilbert. Gilbert had gotten into the intersection 14 to 15 feet, and Stellwagon had gotten into it 20 to 23 feet. Therefore, when Gilbert actually entered the intersection, Stellwagon was more than 100 feet away, and, when Gilbert slowed down and looked to the west, Stellwagon was nearly a block away, out of the vision of Gilbert who could see from the place he looked less than a block, and, at the speed Stellwagon was traveling, he could have made a block from the time Gilbert looked to the west, then to the east, put his car in low gear, and proceeded into the intersection 12 to 15 feet.

Beauregard is a right of way street, but the ordinance of the city of Alexandria does not require one entering from Sixth street to stop, unless a car on Beauregard is in sight and close enough to appear dangerous. The speed limit on Beauregard is eighteen miles per hour, and Gilbert, in entering the intersection, did not have to anticipate that Stellwagon would be violating the law, when he looked to the west and to the east at a point where he was in a position to see for more than half a block each way; he had complied with all the laws of the city of Alexandria and all the rules of care and precaution required of him. He was justified in attempting to cross. If Stellwagon had been in sight when Gilbert looked, and had been observing the speed laws of the city, Gilbert would have had sufficient time to clear the crossing before Stellwagon arrived. Gilbert had a right to act on the assumption that any one traveling on Beauregard street would observe the law. Ford v. Tremont Lbr. Co., 123 La. 742, 49 So. 492, 22 L. R. A. (N. S.) 917, 131 Am. St. Rep. 370; Damonte v. Patton, 118 La. 530, 43 So. 153, 8 L. R. A. (N. S.) 209, 118 Am. St. Rep. 384, 10 Ann. Cas. 862; Maritzky v. Shreveport Rys. Co., 144 La. 692, 81 So. 253.

It is argued that Gilbert did not look when at the right place to look. We think he did. He was not required to drive into the edge of the intersection and then stop and look. He looked from a point where he could see for at least half a block and knew he could traverse the intersection before any one who was farther off, and who was observing the speed laws, could arrive at the intersection. He saw no one for the reason that there was no one within his vision and there was no car coming within half a block distance.

It is further argued that, after Gilbert entered the intersection, he should have seen the on-coming car of Stellwagon. He was not required to do the impossible. He could not look to the east, west, and in front of him at the same time, and he necessarily had to pay some attention to his car. He took all the precaution and care before entering the intersection that any reasonable man could take, and was fully justified in attempting to cross. He was guilty of no negligence and his acts were not the proximate cause of the accident. He reduced the speed of his car so low that it was necessary to go into low gear to get across the street. He was watching for traffic, looked both ways at a point where he could see for more than half a block, no car was in sight, and he rightly proceeded into the intersection. He entered the intersection when Stellwagon's car was far enough away to have been stopped, a duty the law placed upon him.

Stellwagon testified that, when he was 72 feet from the intersection, he saw Gilbert, who was then 55 feet from the intersection. The speed the cars were traveling makes this statement impossible. There is much controversy between Stellwagon and Gilbert as to whether the cars side-swiped or Gilbert's car ran into the side of Stellwagon's car. This is immaterial. If Stellwagon was driving at a rapid rate of speed directly in front of Gilbert's car, too close for Gilbert to stop, or if they side-swiped, would in no manner change the view we take as to the want of negligence on the part of Gilbert.

We therefore find that the judgment of the lower court, in so far as it awarded judgment for plaintiffs against J. H. Gilbert, is erroneous and will have to be reversed. It necessarily follows that his employer, the St.

Louis Independent Packing Company, is not liable.

■ That Stellwagon was negligent in driving at a rapid rate of speed and in failing to keep a proper lookout is proved by a great preponderance of evidence, as well as by his own admissions. The speed limit was eighteen miles per hour on Beauregard street and he was traveling at a rate of not less than thirty-five, and very likely forty miles, per hour. With nine boy scouts, between the ages of 14 and 17 years, in a five-passenger coach, four of the boys being on the fenders, it would have been negligence to travel at a speed of eighteen miles, as allowed by law, and to make thirty-five to forty miles per hour, with such a load, was the grossest kind of negligence, and, as we found in disposing of the case against Gilbert, this excessive speed was a proximate cause of the accident. The charge of negligence made against him of not keeping a proper lookout is well founded, even though we could take as true his statement that he was 72 feet from the intersection when he saw Gilbert's car 55 feet from the intersection, for he testified that he never again looked in Gilbert's direction and never saw Gilbert's car until he heard the crash of the collision.

We have said that the speed of the two cars makes it impossible for Stellwagon to have seen Gilbert 55 feet from the intersection, when he was 72 feet from the intersection, and for the two cars to have collided where they did. We therefore conclude that Stellwagon never saw Gilbert's car until the accident, although Gilbert had entered the intersection when he was at least 100 feet from the intersection. If he had looked in the direction of Sixth street, he would have seen Gilbert's car, and could have stopped his car or turned to the left a few feet, and have prevented the accident, for at least half the street, or 16½ feet, was in front or to the left of the Gilbert car and open for him to pass. The excessive speed, coupled with his failure to keep a proper lookout, was the sole proximate cause of the accident.

■ When crossing an intersection, he should have had his car under control and should have been traveling at a reasonable rate of speed, regardless of the fact that he was on a right of way street. If he had done either and had kept a proper lookout, the accident would never have happened.

■ Counsel for Stellwagon urges that, because plaintiffs allege that Gilbert should have seen Stellwagon's car and should have stopped and allowed it to pass, they have eliminated Stellwagon from the case, in that plaintiffs are bound by their own pleadings. There is nothing in this contention. Plaintiffs alleged negligence on the part of both Stellwagon and Gilbert and alleged that their joint negligence contributed to the accident.

If we should take the petition as a whole and should hold that the allegations against Gilbert exonerated Stellwagon, we could likewise hold that the allegations of negligence against Stellwagon exonerated Gilbert. It would do away with the right to sue joint tort-feasors. This question was discussed at length in Overstreet v. Ober et al., 14 La. App. 633, 130 So. 648, and is, we think, authority for rejecting the contention of Stellwagon.

■ Stellwagon pleaded contributory negligence on the part of young McDonald and McConnell in that they were riding on the running board of the car of their own volition, and, although he did not plead acquiescence by failure to protest, he did urge that point in brief. There is some testimony that Stellwagon asked McDonald to get in the car when he picked him up. However, McDonald denies it, and some of the other passengers in the car failed to hear such a request. When McDonald and James Bell boarded the car, there were three on the back seat and two on the front seat. Bell got in the front seat, thereby filling the car. There were at the time two boys on the front fenders, and later McConnell got on the running board. There is no denying the fact that the McConnell boy was not invited to get in the car or that the boys on the front fenders were not invited to get in the car. There was no place in the car for nine boys to ride with Stellwagon, and he well knew it. If he said anything about getting in the car, it was addressed to McDonald and Bell, and, when Bell got in, there was no room left. There was certainly no protest made by Stellwagon against the boys riding the fenders and running board. They rode there—at least McDonald and McConnell—because there was no other place to ride, and with the full assent of their scoutmaster. Stellwagon was the scoutmaster of these boys. They looked to him for training and guidance, and, to a great extent, relied upon his judgment. He may not have had any legal authority over them, but most certainly he had moral authority. His authority was akin to parental authority. He had requested or ordered them to perform certain civic duties, in line with the training he was supposed to give them. He had gone after them for that purpose, and, in doing so, failed to provide them with sufficient transportation. He sought them out from the residential district and told them to "get on" or "get in." They relied upon his authority and judgment and upon their faith and confidence in him, as their chief, and, in obeying his orders, they, as to him, were not guilty of contributory negligence and he cannot be relieved from liability from his gross negligence, because of the acts of these young boys, fourteen years of age, in following, at least, his tacit instructions, or because they occupied the only place to ride he furnished them, and with his full assent.

■ However, we cannot say they would not have been hurt had they been in the car, if it had been possible for them to get in. If the boys were negligent in riding on the running board, such negligence in fact amounted only to the assumption of risk necessarily incident to their position, that is, the risk of travel under ordinary circumstances, and they did not assume the risk of extraordinary and unexpected peril, such as was created by the reckless driving of Stellwagon. If Stellwagon had driven in a safe and sane manner, as was to be expected by one in his position, the two boys no doubt would be well and alive today. They did not assume the risk of his criminal negligence, and their negligence, if any, is not a bar to their recovery. Stout v. Lewis, 11 La. App. 503, 123 So. 346; Gauvereau v. Checker Cab Co., 14 La. App. 448, 131 So. 590; Quatray v. Wicker et al., 16 La. App. 515, 134 So. 313.

■ ■ The other act of contributory negligence urged in brief, but not pleaded, is that it was the duty of McDonald and McConnell to protest against Stellwagon's reckless driving, and, in failing to do so, they acquiesced in his recklessness and are thereby barred from recovery. We do not think the plea is good, due to the relationship existing between Stellwagon and the boys, as above set out, and for the further reason that the record shows that Stellwagon accelerated his speed greatly at the intersection of Seventh and Beauregard, which was only 233 feet from the intersection where the accident occurred, and the duration of time to cover that distance was too short to allow for a protest. Pipes v. Gallman (La. App.) 135 So. 690.

■ However, we prefer to dispose of this issue on the ground that it was not pleaded. To properly plead contributory negligence, the facts relied upon as constituting contributory negligence must be set out. Quatray v. Wicker, supra; Gauvereau v. Checker Cab Co., supra; Giangrosso v. Schweitzer, 10 La. App. 777, 123 So. 127; Quintano v. Ibos, 14 La. App. 73, 128 So. 186.

■ The lower court awarded judgment to J. H. McDonald, individually, the sum of $3,590.80, the amount of actual expense incurred by him for treatment and attention of his minor son, up to the time of trial. This amount is proved to be correct, and there seems to be no contest over the amount. It awarded $7,000 for the use and benefit of the minor, Gordon McDonald, for the injuries received, and plaintiff prays that the amount be increased.

As the result of the collision, Gordon McDonald's right leg was broken above the knee, the left ankle and foot crushed, the flesh being torn away from the bones, and little hope was held for his recovery for some days. He was confined to the hospital at Alexandria for 44 days and then in a Shreveport sanitarium for 64 days. Various attempts were made to set the right leg, which were not successful, and the bone of the leg has knit in an overlapped fashion, resulting in the leg being one inch shorter than the other. The crushed ankle gave the greatest trouble. It became infected and the flesh sloughed off. His ankle joint is immovable, and at the date of this trial in the lower court, nearly one year after the accident, the wound had not healed and he at that time could not stand for very long at a time without pain. He suffered greatly, the pain at times causing him to lose his reason, and a psychiatrist had to be called to look after this development. He was 14 years of age at the time of the accident, a bright studious boy in high school. The amount awarded for the use and benefit of Gordon McDonald is not adequate and should be increased to $10,000.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court, in so far as it awarded judgment against J. H. Gilbert, be reversed and the demands of plaintiffs against him be rejected, at plaintiffs' cost; and that the judgment, in so far as it rejected the demands of plaintiffs against the St. Louis Independent Packing Company, be affirmed; and that the judgment, in so far as it awarded damages for the use and benefit of Gordon McDonald and against R. B. Stellwagon in the sum of $7,000, be amended by increasing said amount to $10,000, and, in all other respects, it is affirmed.