### STUCKEY v. HAYDEN et al.
#### No. 5892.

Court of Appeal of Louisiana. Second Circuit.

March 8, 1939.

Rehearing Denied March 31, 1939.

Hunter & Neilson and John R. Hunter & Son, all of Alexandria, for appellant.

Joseph T. Martin, of Gorum, in pro. per., and H. W. Hill, of Alexandria, for appellees.

DREW, Judge.

In this case the lower court rendered a written opinion in which the issues are correctly stated and the facts, as far as they are given, are in most instances correct. It is as follows:

"While seated on an iron railing which blocks off the Electric Power Plant from the sidewalk at the corner of Fourth and Monroe streets in the city of Alexandria, Parish of Rapides, plaintiff, on June 25, 1937, at about 3:45 P. M., was suddenly run into and severely injured by the automobile owned and driven by J. F. Hayden, one of the defendants herein, which automobile had a collision within the intersection of said two streets at said corner with the automobile owned and being driven by the other defendant, Joseph T. Martin, whereby the Hayden car was struck broadside by the Martin car and shoved or swerved out of its course, across the sidewalk and against the iron railing on which plaintiff was seated.

"Plaintiff, alleging negligence on the part of both Hayden and Martin, sued both of them jointly and in solido for damages in the sum of $3391.50, for alleged expenses for doctors' bills and hospital and medical expenses incurred and $40,000.00 for pain and suffering.

"Each defendant, admitting the accident, denied negligence on his part and alleges negligence on the part of the other as the proximate cause; neither alleges contributory negligence on the part of the plaintiff.

"Mr. Hayden was traveling up Fourth street and Mr. Martin out Monroe. According to the traffic ordinances of the City, Monroe street traffic has the right of way over that of Fourth, there being a Stop sign on Fourth at the point of its intersection with Monroe. Twelve miles per hour is the rate of travel along both streets at that point. Both are thoroughfares in the City; however, the place of the accident is at the extreme upper part of the City next to Bayou Rapides where the traffic is considerable, but not as heavy as it is farther down town.

"According to plaintiff's petition, Mr. Hayden was traveling about 40 miles per hour and Mr. Martin at 35 or 40 in approaching the intersection, and that neither one of them checked or slowed down for the intersection. Defendant Martin, in his answer, admits he was traveling about 20 or 25 miles per hour; avers he was looking carefully ahead, but upon entering the intersection, Mr. Hayden drove into same from Fourth street at a high rate of speed without stopping at the Stop sign, and ran in front of him and he was unable to avoid striking Mr. Hayden's car. He does not allege that he made any effort to stop. In his testimony, he states he was traveling about 25 miles per hour; that he understood he had the right of way; that he saw Mr. Hayden enter the intersection at about 30 miles per hour without stopping, and that when he saw Hayden was going to run in front of him, he put on his brakes, but was unable to avoid striking him.

"Mr. Hayden avers in his answer, and so testified, that he was traveling not exceeding 10 or 12 miles per hour in approaching the intersection; that he came to a complete stop at the Stop sign, in accordance with the traffic rules; that he looked first to his right then to his left, saw no cars in either direction, then, putting his car in gear, proceeded into the intersection at about 6 miles per hour. He testified that his car was still in second gear when the Martin car struck him; and that he did not see the Martin car until it was right upon him.

"Mr. Danton, witness for plaintiff, testified that he was seated by plaintiff on the iron railing talking with him; that he observed the Hayden car about half a block away, coming at about 25 miles per hour, also observed the Martin car coming along Monroe street at about 25 or a little better per hour; that he thought Mr. Hayden would stop at the Stop sign on Fourth street, but he did not stop nor slow down. Plaintiff testified substantially to the same as did Danton, except that he estimated the speed of both cars at 30 miles per hour and that neither car slowed down. He

states that he thinks the Hayden car entered the intersection first.

"Mr. Maxey, witness for defendant Martin, testified that he was driving his truck along behind Mr. Martin; that as they approached the intersection, he saw the Hayden car run into it without stopping and continued on and ran in front of Martin. On cross-examination, he stated he was travelling about half a block behind Martin's car and going about 18 miles per hour; that the Hayden car slowed down at the intersection, but did not stop.

"Mr. Martin testified that he was traveling about 25 and Mr. Hayden about 30 miles per hour; that he thought Hayden would stop, but he did not; and that when he saw Hayden was not going to stop, he (Martin) threw on his brakes, but was unable to avoid striking the Hayden car.

"Defendant Hayden, as has been stated, testified that he was not traveling over 10 or 12 miles per hour,—at most, not exceeding 15—in approaching the intersection; that he came to a complete stop, looked in both directions, saw no car in either direction, then put his car in gear and started across at about 6 miles per hour.

"A Mr. Haynes, who saw Mr. Hayden back down Fourth street as he was traveling toward the intersection, testified that Hayden was going at a moderate rate of speed.

"Louis Edison, a negro man, testifying for Mr. Hayden, stated that he was walking along Monroe street at the time and that as he came to Fourth street, Mr. Hayden drove up and stopped, and that he, Edison, passed across Fourth in front of the car while it was stopped. He was positive Mr. Hayden did stop. Burley Jones, another colored man, testified that he walked across the street just behind Mr. Hayden's car as it entered the intersection, and is equally positive Mr. Hayden stopped. Both of these negroes are men of mature age and were apparently testifying truthfully as they saw the movement of the Hayden car.

"Policeman Aymond testified that Mr. Hayden, who has resided in Alexandria for many years, is known as a prudent and careful driver. Aymond further testified that he reached the scene of the accident shortly after it happened and, in talking to Martin, he could tell from his breath that Martin had been drinking; that Martin said he had drunk three bottles of beer and had been driving for two or three days and nights, returning from some place in West Virginia. Policeman Zackary testified that he heard Martin say he had had three bottles of beer and had been driving for three days and nights. Evidently Mr. Martin was not fully at himself, as his sensibilities must have been considerably dulled.

"Any automobilist of ordinary experience knows that it requires extraordinary care in readjusting his speed to accommodate city traffic rules immediately following long country driving. To do so requires clear and alert thinking.

"The court is of the opinion, from all the weight of evidence, that the Hayden car was traveling at a much slower rate of speed than the Martin car, both in approaching the intersection and after entering same. It also believes that the Hayden car in fact came to a stop, as Mr. Hayden testified.

"According to the physical facts, the Hayden car had traveled a distance of about 30 feet, and the Martin car only about six feet, after entering the intersection, up to the moment of the impact. The Martin car struck the Hayden car apparently broadside and pushed or shoved it out of its course to the left, causing it to run some 33 feet over against the iron railing where it struck plaintiff, inflicting the injuries complained of. Both cars were about the same weight. If there was any difference, the Hayden car was slightly heavier. From the damage done to the Hayden car and the distance it was driven, the Martin car evidently was going at a fast speed, as it was a terrible impact.

"The court is led to believe that the Hayden car had entered and preempted the intersection a sufficient length of time ahead of the Martin car for Mr. Martin to have stopped, had he been traveling at traffic regulatory speed and had he been keeping a proper lookout. Just because Monroe street was a right of way street did not justify Mr. Martin in driving rapidly along it in disregard of Mr. Hayden's rights after preempting the intersection in the manner he did. McDonald v. Stellwagon, La.App., 140 So. 133.

"The court therefore concludes that defendant Hayden was not negligent, hence not liable; and that defendant Martin was guilty of negligence, which negligence was the proximate cause of the accident and injuries suffered by plaintiff, and therefore liable in damages. * * *"

This opinion was handed down on April 26, 1938, and on April 29th following, plaintiff filed the following application for a new trial:

"On motion of Hunter & Neilson, attorneys for the plaintiff herein, and on suggesting to the court that the judgment rendered in this cause on the 26th day of April, 1938, should be set aside and that a new trial should be granted in this matter for the following reasons, to-wit:

"Because, since the trial of this cause, plaintiff has discovered new evidence which he could not, with due diligence, have obtained before, viz;

"A check of the payroll records of the H. D. Foote Lumber Company, Alexandria, Louisiana, shows that Burley Jones, a witness on behalf of the defendant Hayden, who testified that he was on the corner of Fourth and Monroe streets in the city of Alexandria, Louisiana, on June 25, 1937, and saw the said accident, was in fact employed by the said Lumber Company on that date and did work for a period of ten hours during the said day, so that he, therefore, could not have been on the corner at the time of said accident.

"That a witness, named Thomas Milligan, who resides at 107 Sixth street, will testify that he knows the said Burley Jones very well and that, on the day of the said accident, that is, June 25, 1937, he saw the said Jones in the yard of the said Lumber Company working there, as the said payroll record indicates, and that he saw the said Jones in the said yard at about 2:30 P. M., on the date of the said accident.

"That a witness, named Lee Harris, who resides at 25 Fourth street, will testify that on the day of this said accident, which was June 25, 1937, he was seated on the steps leading to a house on the right side of Monroe street, going from Third in the direction of Fourth, which house is believed to bear municipal number 330 Monroe street, and which is the last frame house on that block closest to Fourth street on that side of Monroe street; that he had been seated there since approximately 3:00 P. M., on that said date; that he knows the said Burley Jones well and that the said Jones had not passed down Monroe street just prior to this said accident and was not on the said corner at the time of the said accident. Further, this said witness will testify that Louis Edison, another witness on behalf of the defendant Hayden who testified that he was on the same corner as the said Jones, is well known to him and, further, that the said Edison did not pass down Monroe street just prior to the said accident; and further, that the said Louis Edison was not on that said corner just prior to the said accident.

"That a witness, named Essie Mae Sanders, who resides at 514 Madison street, will testify that on the day of the said accident, she was seated in an upstairs room of the said house on the steps of which the said Lee Harris was seated; that she was looking out of a window of the said room which faced on Monroe street, and that she was seated so that the corner of Fourth and Monroe streets, same being that corner on which the said Burley Jones and Louis Edison testified they stood just before passing to the front and rear of Mr. Hayden's car; that she knows said Louis Edison well and that he was not on that said corner at that time nor was anyone else on the said corner just prior to the said accident.

"And on further suggesting to the court that these records have indicated to the said plaintiff that the two witnesses, Burley Jones and Louis Edison, have been guilty of perjury and that the strength of their testimony has worked an injustice on the said plaintiff, and that he had used all of his efforts and diligence in an attempt to locate these witnesses, was in view, but that he was unable to locate them until after the said trial and after judgment had been rendered, without avail."

And accompanied the same with an affidavit. The motion was argued and overruled.

A material point in the case is whether Mr. Hayden brought his car to a stop before entering the intersection. Plaintiff, defendant Martin and two other white men are positive he did not. Hayden and the two negro witnesses, Louis Edison and Burley Jones, are positive that Mr. Hayden did bring his car to a stop.

█ The testimony of Edison and Jones, to our minds, is unsatisfactory, and if it were not for the statement in the opinion of the lower court that he believed they were telling the truth, we would not hesitate to disregard their testimony for reasons we will hereafter discuss, but since in most instances it is in the province of

the lower court to pass upon the veracity of the witnesses, instead of us, we prefer to follow the course we have decided upon in this case.

Edison testified that he was standing on the corner of Fourth and Monroe streets; that Mr. Hayden drove up and stopped his car, at which time he crossed the street, passing directly in front of the Hayden car; that he had gone about 25 feet on the other side of the street when he heard the collision. He turned and saw what had occurred, but did not go back to see about it. He testified that he worked at a saloon several blocks from the scene of the accident and had been sent out by his employer to gather up empty bottles. He detailed the route he took, which was entirely off his course and, when asked why, stated he was just "ratting" on the job, as all negroes do. Although Edison was "ratting" on his job and merely killing time, as he stated, as soon as the collision occurred he suddenly decided he did not have time to go to the scene of the accident. He gave as another reason that he did not want to be a witness in any case.

Burley Jones testified that he was standing on the same corner where Edison claims to have been, and Mr. Hayden drove up and stopped his car. As soon as he did that, he crossed the street just behind the Hayden car. Jones heard the collision, looked around, saw what had happened and did not go to the scene, but continued to a saloon, which was his destination at that time. He gave as his reason for not going back to the place of the accident that he had taken some pills and was hurrying to a toilet.

Jones and Edison knew one another, yet neither spoke to the other. Edison did not see Jones, but Jones testified that he saw Edison. Defendant Hayden did not testify that he saw either of the two, although they claimed to have been on the sidewalk near the place he claims to have stopped,

and one of them says he passed directly in front of the stopped car and the other just to its rear. No witness was produced who saw either Edison or Jones at or near the corner where they claim to have been.

Plaintiff could not have known in advance what Jones and Edison were going to testify and therefore could not have been prepared to show their whereabouts at the time of the collision. If plaintiff can show to the satisfaction of the court that these two negroes were not present and are, therefore, perjurers, then defendant Hayden's testimony that he stopped his car is entirely uncorroborated, and a just decision of the case will be greatly facilitated.

■ Courts of justice are always seeking truth and when, in order to get the truth, it becomes necessary to remand a case for further evidence, it is clearly the court's duty to do so and the law gives us that privilege and authority.

■ We realize fully that the question of granting or not granting a new trial is almost entirely within the discretion of the lower court, and we are not overruling the court in that respect. However, we are exercising the authority granted to us by law and remanding the case for further testimony either side wishes to produce on the question of whether or not Mr. Hayden brought his car to a stop before entering the intersection of Fourth and Monroe streets, and other questions discussed in this opinion.

We express no opinion as to the liability of defendant Hayden, if he did stop.

It therefore follows that the judgment of the lower court, insofar as defendant Hayden is concerned, is set aside and the case is remanded to the lower court to be proceeded with in accordance with the views expressed herein and according to law; all costs to await the final outcome of the case.