No. 825

First Circuit

—

CHANSON v. MORGAN'S L. & T. R. R. &
S. S. CO. ET AL.

—

William Donnaud, of New Orleans, attorney for plaintiff, appellee.

(October 7, 1931. Opinion and Decree.)
(December 8, 1931. Rehearing Refused.)
(February 1, 1932. Writs of Certiorari and Review Refused by Supreme Court.)

William H. McClendon, Jr., of New Orleans, attorney for defendant, appellant.

—

Wm. F. Conkerton and S. S. Kiblinger, of New Orleans, attorneys for plaintiff, appellee.

Milner & Porteous, of New Orleans, attorneys for defendants, appellants.

LeBLANC, J. Glynn Chanson, aged eighteen years, was killed almost instantly, on the morning of May 26, 1930, at about 7:30 o'clock in a collision between an automobile in which he was riding and which belonged to and was being driven by John D. Russ, and a locomotive of the defendant railroad company which was hauling a train of freight cars over the tracks at the crossing known as Chacahoula crossing in the parish of Terrebonne. His father, Frederic N. Chanson, plaintiff herein, filed this suit against both the railroad company and John D. Russ in solido, for damages arising out of his death. The de-

mand, which was for $25,398.50, includes damages for the suffering and death of his son, loss of his future support and companionship, and funeral expenses.

The lower court sustained an exception of no cause of action filed on behalf of the railroad company and dismissed the demand as to that defendant. It overruled a similar exception on the part of the defendant Russ and, on trial of the case on the merits, rendered judgment against him in the sum of $3,500 from which he prosecutes this appeal.

No appeal was taken from the judgment sustaining the exception of no cause of action and rejecting the demand as against the Morgan's Louisiana & Texas Railroad & Steamship Company. The demand as far as that defendant is concerned, therefore, passes out of consideration.

Plaintiff has answered the appeal taken by defendant Russ and asks that the judgment be amended by increasing it to the amount originally prayed for, or, in the alternative, "to such an amount, as the Court, after considering the pleadings, facts, and evidence in the matter," feels justified in allowing.

The defendant forcibly stresses before us his exception of no cause of action which was overruled in the lower court. The exception is based on plaintiff's failure to have alleged that his son made any protest or objection after having charged him with negligence in driving at an excessive rate of speed in approaching a railroad crossing and in failing to observe the Louisiana Stop Signal posted on the highway one hundred yards ahead. Expressing it in different terms, defendant's contention may be said to be that plaintiff should have negatived contributory negligence on his part.

We know of no law or rule of pleading which places on the plaintiff in a damage suit, the task of negativing contributory negligence in his petition. The plea of contributory negligence is a special defense which has to be specially pleaded and upon being urged by a defendant imposes on him the burden of supporting it by proper proof. To require of the plaintiff that he make an allegation negativing contributory negligence might have some serious effect on this well-established rule of evidence, by shifting the burden of proof. We do not want to be understood as holding that a plaintiff may not in some case allege a statement of facts from which it might be construed that he was guilty of contributory negligence, but that is not the issue presented here, as it is the lack of certain allegations which counsel contends gives rise to the exception.

Pursuing counsel's contentions further, we find him arguing from those principles of law which impose certain duties on the occupants of automobiles, the failure to observe which may make him guilty of contributory negligence and deny him recovery in an action for damages against the driver. Among the many duties the guest has is primarily the one to observe ordinary care to avoid injury, including a reasonable use of his senses and judgment to appreciate danger. Then, there is the duty to warn the driver of a threatened danger, the giving of the warning depending of course on the facts and circumstances of each case as they present themselves. He also has the duty to protest against the negligent or unlawful conduct of the driver, his duty in that respect also depending on the particular facts as they appear in each case. The very principles of law upon which counsel relies so strongly require in each case that the failure of the automobile guest to have ob-

served the particular duty imposed on him must have contributed as a proximate cause to the injury in order to charge him with contributory negligence, which stresses the necessity and importance of inquiring into the facts to ascertain the immediate and real cause of the accident.

We are of the opinion that the exception of no cause of action on behalf of the defendant Russ was properly overruled by the trial judge, and we proceed to a consideration of the case on the merits.

In his answer, Russ sets up three defenses to plaintiff's claim. The first is that young Glynn Chanson was not his guest; second, that the trip they were making together constituted a joint venture or joint enterprise between them; and the third is the plea of contributory negligence which had been unsuccessfully urged on the exception of no cause of action.

Counsel's contention seems to be that because young Chanson asked Russ to let him go with him on this trip to New Orleans, instead of having had an invitation from Russ to do so, he was not a guest. We do not believe that it takes that much to constitute one a guest in another's car. The moment Russ acceded to Chanson's request and the latter entered the car, the relation of host and guest began and Russ owed him the duty which the law places upon the driver to his guest. In its ordinary meaning, the word "guest" is defined in several dictionaries as "a person received and entertained at the house of another." Used in connection with the kind of guest here under consideration, that definition might be paraphrased as follows: "An automobile guest is a person received and entertained in the automobile of another." Funk & Wagnall's Standard Practical Dictionary comments further on the

term and says that it "is applied with little respect to the duration of the call or WHETHER THE PERSON BE PRESENT BY INVITATION OR NOT." (Capitals ours.) Accepting this meaning of the term, there is little room left to doubt that young Chanson was a guest in Mr. Russ' car, and consequently that defense was properly rejected by the district judge.

The second defense offered, namely, that Russ and young Chanson were engaged in a joint enterprise, has not, in our opinion, any more merit than the first. We have frequently, in recent cases, had the doctrine of joint enterprise or "common venture," as it is also called, before us for consideration, notably in the cases of Lawrason v. Richard, 16 La. App. 434, 129 So. 250, and Neuman v. Eddy, 15 La. App. 45, 130 So. 247. The Lawrason case went to the Supreme Court on a writ of review from our court, where the only question considered was the defense of joint enterprise which had been raised and had been rejected by us. In its original opinion the Supreme Court reversed the judgment of this court and held that the defense was well taken, but on rehearing, overruled their own decree and reinstated the judgment of this court. 135 So. 29. Our examination of the various authorities from the different jurisdictions in which the doctrine had been invoked, led us to the conclusion that it was to be applied only in those cases where it was shown that each occupant of the automobile had as much or great interest, or community of interest, as the others in the purpose of the enterprise, and each had the right to control or direct the movements of each other, in regard to the matter. In both cases referred to, we quoted from numerous decisions which we do not find necessary to do here again. With the idea we have as to what

is necessary to constitute a joint enterprise, let us now consider the facts in the case before us and see if the requirement is met.

The trip Russ was taking to New Orleans was not planned by anybody save himself. He had expected to go to Monroe on some business that evening instead, and on learning that he did not have to, conceived the idea of running down to New Orleans on a week-end pleasure jaunt. He said something about it in the presence of Chanson, who asked him to let him go with him, offering to pay expenses. Russ immediately acceded to his request to go but would not let him pay any of the expenses of the trip except to buy five gallons of gasoline in New Orleans, and this he did largely for the purpose of pleasing him. Arrived in New Orleans, they separated, Chanson going to the home of his father, his purpose in making the trip being principally to visit the latter, and Russ going his own way to enjoy the pleasures of a week-end visit to New Orleans. True it is that at Chanson's request the return trip to Crowley was postponed from Sunday evening to Monday morning and that it was at his suggestion also that the route was changed from the Houma to the Chacahoula route, but neither of these matters could young Chanson have insisted on. The postponement of the trip back home was purely an accommodation to Chanson which did not inconvenience Russ in any way, and the change in the route was made, not because Chanson had any authority or right in the matter, but simply because it pleased Russ to adopt the suggestion. Above all this, Russ says himself that he was in sole, exclusive control of the automobile. This positive assertion on his part is of itself, without having to give much consideration to the other facts and circumstances sufficient to preclude the idea that these two parties were engaged in a common venture or joint enterprise within the meaning and general application of those terms.

Coming now to a consideration of the plea of contributory negligence, it becomes necessary for us to refer to the facts in the case, none of which are disputed.

Mr. Russ is a man fifty-seven years old and has a very responsible position as manager of a rice mill in Crowley. He earns a nice salary and his testimony reveals him as a man of high intelligence and well educated. The deceased young man was his stenographer and private secretary and was held in high esteem and regard by him. The facts leading up to the trip they were on, and which took them down to the Chacahoula crossing on the morning of this unfortunate accident, have been related in more or less detail in discussing the defense of joint enterprise, so we proceed with them from that time.

Russ was driving and young Chanson was seated on his right. The road is straight for several hundred yards before reaching the railroad crossing and there is a warning sign about a hundred yards before reaching it as well as the Louisiana Law Stop Sign as we get nearer to it. Russ was familiar with the road and the crossing, having passed there thirty or perhaps forty times before. Notwithstanding his knowledge of the existing conditions, Russ was driving at a rapid rate of speed and gave no heed to the warning signs by slowing down. The freight train with which he collided was going east and before reaching the crossing was to the right of the automobile. The engineer and fireman both testify as to the usual locomotive signal being given with both the whistle and bell. Despite these additional warn-

ings, one of which, the whistle, could be heard anywhere from half a mile to a mile away and the bell some three or four hundred feet, Russ kept coming on at the same rate of speed until, as he testified, they were some fifty to seventy-five feet from the crossing, he heard Chanson yell, "Look out," and it was then for the first time that he apprehended the danger they were in. Unfortunately it was too late. He tried to swerve his car around so as to parallel the locomotive, hoping that it would turn over before crashing into it, but it did not. Chanson had already opened the door of the car and was standing on the running board, bent no doubt on jumping if he could, but before he could do so, he was crushed between the car and the locomotive and killed almost instantly.

Russ gives no explanation of his action, except that he was deeply absorbed in thought and oblivious to all of his surroundings. He saw no warning signs and heard no signals. There can be no question as to his negligence, which indeed is admitted. Counsel who represents him however, and who frankly states to the court that the real defendant is the insurance company which carried Russ' liability insurance, strenuously maintains that young Chanson, who had every opportunity of observing the situation and sensing the danger as well as Russ, should have called on him in time to avert the collision, and in failing to have done so contributed by his own negligence to the accident, and consequently his father cannot recover.

Russ testifies that there had been no conversation between him and Chanson for some time prior to reaching Chacahoula crossing. That Chanson must have sup-

posed Russ to be engaged in thought is to be expected as thinking is the natural process of a rational mind. But there is nothing to indicate that Chanson knew or could have known that Russ was so deeply engrossed in his thoughts as to be perfectly unmindful and forgetful of everything else in this world. So far the trip had been uneventful. Judging from the time it took them to reach Chacahoula, Russ must have maintained a fairly good rate of speed all the way from New Orleans. On nearing the railroad crossing, he was still going fast, but not in excess of the speed limit. He should have slowed down on getting nearer the crossing, and this, Chanson had every right to expect him to do in view of the fact that it was a railroad crossing and of the signs posted along the road. There is no testimony to show that either one saw the train until they were within fifty to seventy-five feet from it, at which time young Chanson did all that he could possibly do, by shouting the words: "Look out!" Prior to that time, his negligence, if any, can only be inferred from his failure to have heeded and called Russ' attention to the whistle and bell signals of the locomotive, provided of course they were given and he heard them. That they were given is well established by the testimony of the locomotive engineer and fireman, but that Chanson heard them is by no means certain. As quick as he was to yell out when he saw the train, it would be reasonable to assume that he would have been equally as alert had he heard the blast of the whistle and the clanging of the bell. As well and most aptly stated by the learned trial judge: "A good test of what one could and must have seen and heard at a particular place and time, is the accurate ascertainment of what other persons, simi-

larly situated and placed, actually heard and saw. The one person in the world who, on that morning, was nearest similarly placed and situated as Chanson, was the defendant, Mr. Russ. * * * Yet, though on the same seat with Chanson, Mr. Russ frankly and sadly confesses that neither the whistle, bell, crossing or 'stop' sign arrested his attention or engaged his consciousness; and this, though as the pilot of the car, it was his, rather than Chanson's particular task to observe that 'changing way' and safely to navigate the route of travel. If this admittedly normal person, conscious of a graver responsibility than must have weighed on Chanson's spirit, failed either to see or to hear, he can scarcely insist that his companion necessarily heard or saw." On this point, we quote further from the judge's well reasoned opinion:

"The error of counsel's logic is found in his acceptance of the opinion and judgment of witnesses that the whistle and bell could and should have been heard at distances varying up to a half a mile. The opinion and judgment so expressed may be true as to many or, possibly, most people. It was manifestly not true as to Mr. Russ. Why then should it be held rigidly true of Chanson, who is not shown to have been more normal than Mr. Russ and who could not have been more seriously impressed with his personal responsibilities, anent the drive, than was Mr. Russ who had charge of the wheel and steering gear of a rapidly moving vehicle? Indeed there was no particular reason why Chanson should feel the necessity of maintaining himself on the alert. He was not at the wheel, had no control over the management or course of the car, and had every reason to feel that he was in the hands of an experienced and dependable driver. * * *"

In the case of Churchill v. Texas & Pacific Railroad Co., 151 La. 727, 92 So. 314, the Supreme Court announced a rule which has been frequently applied by this and the other Courts of Appeal in the state. It is to the effect that an occupant of an automobile, not having charge of the operation of the machine, is not required to keep a lookout for danger, but can rely upon the driver for the proper discharge of that duty. We think the rule is peculiarly applicable in this case, and by its application, defendant's plea of contributory negligence is defeated.

The demand of the plaintiff contains two items of damage on which we find no evidence whatever in the record. Those are the claims for funeral expenses and services of the priest. He also claims $5,000 for suffering, having in mind no doubt the suffering endured by his son. The right to recover for suffering is a heritable one which is enjoyed by the father, but it must be made to appear that the deceased did actually suffer. The death of this young man was almost instantaneous with the collision. He was gasping his last breath when the fireman reached him, and it may have required three or four minutes for him to get to him. It is very doubtful that he realized what happened or that he ever was conscious or sensible to pain after he was struck. If there was no suffering, it follows that the father did not inherit any right to recover for any. For the remaining items, the death of his son, loss of his future support and companionship, the district judge awarded plaintiff the sum of $3,500, which, considering all the facts and circumstances as well analyzed by him, is a fair and reasonable allowance and we will not change it either way.

The judgment is therefore affirmed.