## STOKES v. BIG CHAIN STORES, Inc.
### No. 4935.

Court of Appeal of Louisiana.
Second Circuit.
Feb. 5, 1935.

W. W. McDonald of Shreveport, for appellant.

Irion & Switzer and Henry F. Turner, all of Shreveport, for appellee.

DREW, Judge.

Plaintiff instituted this suit for damages in the sum of $5,100. His claim for damages is based upon the fact that he fell into an open elevator shaft in defendant's store, when entering the store from the rear for the purpose of returning some damaged merchandise he had bought earlier in the day.

The lower court awarded plaintiff damages in the sum of $200, from which judgment both plaintiff and defendant have appealed.

The judge of the lower court rendered a written opinion which fully discusses the issues and facts in the case. It is as follows:

"This is a suit for damages growing out of the following facts:

"Plaintiff purchased on behalf of someone else some grapes from the defendant, and on his first trip to the store was instructed to go to the back and that an employee of the store would put the grapes in his car. On that occasion he went through the back entrance, which required passing over a freight ele-

vator, and then to a sort of hallway and then into the open alley.

"He testifies that upon discovering that the grapes were faulty, he was instructed to bring them back to the store, and he and his wife and daughter drove their car into the alley where they stopped, and he started back into the store through the same passage he had traversed in the morning; that it was sunshiny outside and the hallway and entrance were dark, and that he entered the entrance, falling into the elevator shaft over his head in a sort of swill, injuring his arm and emerging soaking wet and with a foul and disagreeable odor. He testified that the elevator was up at the time and that there was no guard to protect him from the opening, and not sufficient light for him to see it as he came from the bright alley into the hallway.

"The defense is a general denial, and while the defendant does not deny that the plaintiff fell into the pit, it denies that it was negligent in any manner whatsoever, and it presented testimony tending to show that the opening was properly guarded. This testimony was objected to by plaintiff on the ground that there was no plea of contributory negligence, and that such testimony was in support of the theory of contributory negligence rather than a denial of negligence on its part.

"It is undoubtedly true that contributory negligence must be specially pleaded in order for the defendant to avail himself of such defense; but in this particular case where the negligence of the defendant relied upon by plaintiff is the contention that the guard to the elevator shaft was not down in the place it should be while the elevator is up, and where that fact is denied by the defendant, any evidence tending to show that the guard was in proper place is solely in rebuttal of the evidence of negligence adduced by the plaintiff, and therefore not in proof of contributory negligence, and we conclude that it was admissible testimony.

"The issue is therefore narrowed to the single issue of fact as to whether or not the guard was in place at the time Mr. Stokes fell into the pit.

"Mr. Stokes, the plaintiff, testifies that it was not in place, and he is corroborated by the physical and undenied fact that he actually fell in.

"On the contrary, the defendant showed that the elevator was in good working order, and described how the elevator starting to rise from its position, level with the floor, upon reaching a height of from 14 to 18 inches, it tripped a key which permitted the gate or bar to fall from a position some 9 feet above the floor to a position where the bottom of such gate was about 32 inches above the level of the floor; and that there it remained fastened until the elevator again descended and again tripped the key, releasing the gate so it could be raised by any person desiring to pass through should he lift it, as it hung on weights somewhat similar to the manner in which windows are hung on window weights.

"The defendant further adduced testimony showing that the elevator was continually serviced; that it had recently been greased; and it was likewise brought out that on occasions the gateway would stick.

"The defendant further presented testimony to the effect that the elevator was working properly on the particular day in question, though no one ventured to assert that he had seen the gate fall into place at the particular time the elevator went up just prior to the accident.

"One negro witness testified that he warned Mr. Stokes that the elevator was up, but there is no evidence to show that Mr. Stokes heard the warning, and he denies it. Two white witnesses testified that Mr. Stokes told them afterwards that he went under the gate. Plaintiff denies all of this, and again affirms that he never saw the gate and that he did not stoop under it. Mr. Novak, the elevator expert, who knows this elevator, testified that one cannot walk off into the pit if the gate is in place.

"In weighing the comparative strength of the conflicting evidence on behalf of plaintiff and on behalf of defendant, we have this situation: The plaintiff has no other sworn testimony to substantiate his case; but he does have the physical fact that he actually fell into the pit, coupled with the assertion on the part of the defendant's witnesses that he could not have fallen in if the gate was in place. On the contrary, there are two white witnesses who testified positively that the plaintiff asserted that he crawled under the gate; one negro who claims to have seen him stoop under it, and another one who saw the gate in place, after plaintiff got out.

"To sum up the testimony, a large part of defendant's evidence is of a negative character. The two white witnesses testifying that Mr. Stokes stated to them that he crawled under the gate may be discounted by the fact that in conversation with him they neces-

sarily were endeavoring to explain how he could have gotten into the pit; and he certainly went under the gate regardless of how high the gate was from the floor. Statements of this kind when no direct quotation is testified to are often placed in language differing only slightly from that used, but which may put an entirely different meaning to it from that intended.

"It may be impossible to explain from the record the testimony of the negro who claims to have seen Mr. Stokes stoop under the gateway, but nevertheless we are still confronted with the actual fact that Mr. Stokes fell into the pit when the defendant's witnesses said he could not have done it if the gateway was there. The effort to explain the fact that he fell into the pit by that testimony which intimates that he crawled under it does not appear to me to be strong enough to counterbalance the very convincing fact that he actually did fall in. It seems incredible that a man of ordinary intelligence would have attempted to crawl under a gate 32 inches high. It seems more incredible that, having gotten to the gateway, having found it in the way and then having stooped down, he should not have seen that the water in the pit was not the floor, and that it was some two or three inches lower than the level of the floor.

"For the court to believe that the plaintiff actually stooped down and crawled under this gateway, it must not only disbelieve Mr. Stokes entirely, but it must also discredit him as a man of normal intelligence, who would act in a normal manner. Besides this, he had been induced to enter by this passage by employees of the defendant on the morning of that same day, and he naturally returned in the afternoon for similar purposes by the same route, with nothing to warn him of any danger such as he encountered. He was no trespasser; and if he did foolishly stoop down to crawl under the gate, he would probably be guilty only of contributory negligence, which was not pleaded. The effect of this evidence is considered only in relation to the question of whether or not the gate was in place.

"For these reasons, in spite of the apparently large amount of sworn testimony on behalf of defendant, we believe that plaintiff has met the burden of proof on the question of fact, and there remains the question of quantum of damages.

"Plaintiff testified that his elbow was bruised, and that a nerve was affected in such a manner that for some days he did not have the full use of his fourth and fifth fingers. He was not prevented from attending his shop at all, and on only a very few occasions he turned his patrons over to other barbers to be shaved, though he continued to clip hair, and the difficulty soon disappeared. He was never laid up at all, and he visited his physician twice. His physician declined to state the amount of his bill, but seems to have rendered no unusual services, chiefly giving advice as to how Mr. Stokes should treat himself. It appears that what Mr. Stokes largely suffered from was the disagreeable experience of being covered from head to foot with a very disagreeable swill, and the slight bruise and very temporary impairment of the use of his hand.

"We feel that an award of $200 is proper compensation, and judgment is rendered accordingly.

"Cecil Morgan, Judge, First Judicial
District Court."

We fully agree with the finding of the lower court, and the judgment is affirmed, with costs.