OLIPHANT v. TOWN OF LAKE PROVIDENCE et al.

No. 5633.

Court of Appeal of Louisiana. Second Circuit.

June 1, 1938.

On Rehearing Dec. 1, 1939.

Writ of Certiorari and Review Denied Feb. 5, 1940.

Hudson, Potts, Bernstein & Snellings, of Monroe, and Snyder & Sevier, of Tallulah, for appellant.

George Wesley Smith, of Monroe, and Thompson L. Clarke, of St. Joseph, for appellee.

DREW, Judge.

Plaintiff instituted this suit seeking to recover of the Town of Lake Providence and its insurer, Maryland Casualty Company, damages in the sum of $27,000. She alleged that while in the act of crossing Davis street at the intersection of Davis and Second streets, in the town of Lake Providence, she was violently struck by an automobile, the property of said Town, being driven at the time by John Chaney, in the furtherance of the business of said Town.

The negligence alleged is that the car was driven across the intersection at a speed in excess of fifty miles per hour

518

and that the driver thereof failed to keep a proper lookout.

Defendants filed an exception of no cause or right of action to the petition, which was overruled by the lower court, and is not reurged here. Defendant Town of Lake Providence denied all the material allegations of plaintiff's petition and, further answering, averred:

"Your respondent specially avers that at the time of the accident described and set forth in the petition herein and on or about January 3, 1936, John Chaney, was driving and operating the V-8 Ford coupe which struck the petitioner herein, and that said driving and operation of the said vehicle were without the permission and without the authority of your respondent, Town of Lake Providence, Louisiana, and further, without the knowledge, consent or acquiescence of your respondent, Town of Lake Providence.

"Your respondent further avers that said operation of said vehicle by the said John Chaney at the time of the accident herein sued upon was in no wise in furtherance of the business or pleasure or any other purpose of your respondent, Town of Lake Providence, or of the Mayor and Board of Aldermen of your respondent, Town of Lake Providence, and further, that the said John Chaney so operating the vehicle, as aforesaid, was not employed by your respondent, was in no way acting as the agent, servant or representative of your respondent, but was driving aforesaid vehicle solely and only for his individual and personal benefit and purposes.

"Respondent further avers that your respondent is a municipal corporation duly organized under the laws of the state of Louisiana, and as such and under the limitations of the laws creating and empowering your respondent, your respondent is without power or authority to grant to any individual the right or authority to operate vehicles belonging to the said Town of Lake Providence for any other purposes than those appertaining · to the business and corporate purposes of your respondent, and respondent especially avers therefore that in the event any purported or alleged authority or authorization to the said John Chaney to drive the vehicle aforesaid at the time of the accident herein sued upon be shown or demonstrated to this court, that then and in that event, such purported authority or authorization

was ultra vires, void and illegal, and that your respondent, Town of Lake Providence can in no way be held legally responsible therefor. Wherefore respondent, Town of Lake Providence, especially enters this its plea of ultra vires and reserves and asserts all rights thereunder.

"Further answering herein, in the alternative and in the alternative only, your respondent avers that at the time of the accident herein sued upon, the aforesaid John Chaney was operating the vehicle involved in said accident, in a lawful, careful and prudent manner at the time said accident occurred, and was in no wise negligent or at fault and in no wise caused or contributed to the causing of said accident.

"Further answering, in the alternative and in the alternative only, your respondent shows that aforesaid accident whereon petitioner sues herein was due solely and only to the negligence and fault of petitioner in that petitioner was, at the time of said accident, crossing at a point where pedestrians are not legally authorized to cross, and further that petitioner was crossing said street without looking in both directions and without an exercise of due care and prudence under the circumstances, and further that petitioner was in the act of crossing said street, at the time of the accident, in a careless, reckless and wanton manner, indifferent to her own safety, and that said negligence and carelessness of petitioner was the sole and only cause of the accident thereupon resulting."

Defendant insurer denied the allegations of negligence made by plaintiff in the same manner and words as did the Town of Lake Providence, and alleged the negligence of plaintiff was the proximate cause of the accident. It further alleged:

"Further answering herein, your respondent, Maryland Casualty Company, specially avers that on or about December 9, 1935, your respondent issued to 'Town of Lake Providence and/or the Mayor and Board of Aldermen of the Town of Lake Providence, Louisiana' its automobile policy No. 15363576, insuring and covering the said assured as to public liability, property damage and collision occasioned by, or arising out of ownership and operation of that certain 1934 model V-8 Ford coupe, described in said policy, upon the terms and conditions, and subject to the limitations set forth in said policy, during the period December 7, 1935 to December 7, 1936.

"Respondent now further avers that under the terms, limitations and conditions of the aforesaid policy, your respondent is in no way legally liable, or responsible to petitioner herein for the injuries and damage alleged to have accrued to plaintiff from that certain accident, described in petition and herein sued upon, for the reason that aforesaid policy did not and does not cover the accident herein sued upon for reasons and by virtue of circumstances more fully set out hereinafter.

"Your respondent further specially avers that there was and is no coverage, and no liability under the aforesaid policy for the reason that the vehicle therein described was being operated and driven at the time of the accident by one John Chaney, without the permission, authority, knowledge, or acquiescence of the named assured in aforesaid policy; that the said John Chaney was in no way the agent, employee, servant or representative of the said named assured.

"Respondent further specially avers that the aforesaid John Chaney was, at the time of the accident herein sued upon, operating aforesaid vehicle for personal benefits and purposes, and was in no way operating same in connection with the pleasure, or business of the named assured, and was in no way engaged in the furtherance, or prosecution of the pleasure, or business of the named assured.

"Respondent further avers that any purported or alleged authority, or authorization to the said John Chaney to operate the aforesaid vehicle in the manner, and for the purposes for which he was operating same at the time of the aforesaid accident, were illegal, void and ultra vires the Town of Lake Providence and/or the Mayor and Board of Aldermen of the Town of Lake Providence, for the reason that said Town of Lake Providence is a municipal corporation, duly organized under the laws of the State of Louisiana, and, as such, and under the limitations of the laws creating and empowering the said Town of Lake Providence, the said Town of Lake Providence was and is without power, or authority to grant to any individual the right or authority to use public property for any other than public purposes, and more particularly to operate vehicles belonging to said Town of Lake Providence for any other purposes than those appertaining to the business and corporate purposes of the said Town of Lake Providence. Where-fore, your respondent avers respondent is without liability in the premises under the terms and conditions of the aforesaid policy."

On these issues the case was tried below resulting in judgment for plaintiff against both defendants, in solido, in the sum of $17,000. From the judgment both defendants have prosecuted this appeal.

The lower court, in passing on the case, handed down the following written opinion:

"This is an action in damages. Defendant Town, owner of a Ford V-8 coupe, insured by said casualty company, placed said car in the hands of E. J. Chaney, manager and superintendent of the Water & Light Plant of such town for use in the execution of his duties as such officer. On the evening of January 3rd, 1936, said Chaney drove said car, which he kept at his residence, to the Province Motor Company's garage, supposedly to make inquiries about his own car, although he remained to negotiate or talk about tires for the car owned by the Town. It was his duty to do this. It was his duty to replace the Town car where he kept it, and if he did start on a matter peculiar to himself, he engaged in business of the Town. The car insured, the one Chaney used that afternoon, was to be used for business and pleasure. Chaney was in no sense on a pleasure trip and such trip eventuated in the transaction by him of Town business and, being delayed in this, he told his son, John, to drive the car to the place he kept it for the use of the Town and put it up, and while John Chaney was doing this, the accident occurred.

"This case centers on Chaney's position with the municipality of Lake Providence.

"Complainant contends that he was and is an executive officer, a component part of the government of the Town. An executive is one having administrative powers. He who is charged with the administration of a government. (Lake Providence is a municipal government). Its functions are legislative and administrative. Those which are legislative being impressed on the Board of Aldermen. Those which are executive, on the Mayor and others designated as managers, executors or administrators of certain departments of the city government. The powers of such are delegated, and as such legal; and if an executive official acting in the line of

his duty, delegates or appoints another to execute duties mechanical in nature, especially when he is impressed with such power by the corporation of which he is an executive official, and the appointee, in carrying out directions incident to such appointment, through negligence, inattention or inefficiency or disregard for the rights of others, inflicts damage, the sufferer is entitled to recover from the employing corporation.

"E. J. Chaney is and was an administrative officer of the Town, authorized to employ and discharge ordinary employees. His custom in this regard is a necessary adjunct to his duties. It is and was well known and approved by the Mayor and Aldermen of the Town. His authority as an executive official of the Town to have appointed John Chaney to take the car to the place it was kept, is clear.

"The case of Buisson v. Potts, 180 La. 330, 156 So. 408, in which the question of substitution is well considered, affirms this position; and cases and sections of the Civil Code therein quoted effectively clarify the question.

"If E. J. Chaney legally empowered John Chaney to take the V-8 Ford coupe to where it was kept, then John Chaney was acting for the Town when such car driven by him struck and injured the complainant herein.

"If this position is correct, and I am of the opinion that it is, then it becomes necessary to determine whether John Chaney, the driver of such car and employed by said Town, drove such car into the complainant in a reckless, careless and illegal manner, and through such driving of said car, wrongfully caused the damage of which complainant is the victim.

"The pleadings and evidence are somewhat voluminous, though issues clear, and a careful study of the evidence discloses a rather informative picture of the exact conditions and happenings immediately preceding and at the moment of the accident.

"The approach of complainant to the scene of the accident is clear. The exact position or place of its occurrence is in question. Three witnesses place her at the foot bridge at the southwest corner of the intersection of Second and Davis streets. Three witnesses place her on the driveway bridge leading into the Frost yard, some 42 feet south of the said foot bridge. This discrepancy is hard to account for, tho as to the legal effect in the case, it is immaterial whether complainant was struck at the foot bridge or the driveway bridge.

"Witnesses for complainant place her at the foot bridge; she being one of those witnesses, might be considered interested. Fitzgerald, her kinsman, might be biased in her favor. The negro, Jackson, could hardly be so, and those on the spot should know best as to their location than others some 150 to 200 feet away.

"The witnesses for the Town, Mrs. Richards and Mr. King, are in no sense, so far as can be conceived, interested. The driver of the car, young Chaney, would feel a natural bias, though his evidence is quite candid and we see no reason to question his desire to be truthful though his excuse for not turning to the right to avoid the collision, is puerile. Mr. King is more specific in his testimony and clearer possibly in his statements than anyone. He was some 150 feet behind the driver of the Ford coupe and saw complainant clearly as she crossed, he says, the driveway bridge, though admits it was not the foot bridge, unless his eyes deceived him; it was a misty night and she was 150 or 200 feet away. He says the lady was on the bridge when he saw her; that she was walking diagonally in a northeasterly direction across the bridge; that it was a misty night; that Chaney in the Ford V-8 was some 150 to 200 feet nearer the lady than he, and that he does not know whether there was anything to prevent Chaney from seeing her; that Chaney was driving 18 or 20 miles an hour and did not slow up until he struck Mrs. Oliphant. If King saw Mrs. Oliphant when she was crossing a bridge before the car hit her, Chaney could and should have seen her sufficiently long before he struck her to avoid the accident. He says he did not see her because she was behind Fitzgerald. Either he or King is wrong, and the court feels impelled to accept King's statement, I. E. that the woman was not so concealed behind Fitzgerald as to prevent her from being seen by the driver of that Ford coupe, who says he could see and did see Fitzgerald, and that there was nothing to prevent his seeing; therefore, he should have seen the woman. The duties of a driver of an automobile on the street of a city, especially on a misty night when the visibility is bad and when being met by cars whose headlights tend to blind one,

and when approaching intersections of streets, in the face of oncoming cars or parked cars and people standing on the side of the street waiting to cross, all of which are in the view of such driver, and all of which existed at the time in question, are so well defined and so plainly outlined by affirmative law, that quotations therefrom are in the nature of repetitions which rather tend to cumber the record than illumine this case, hence I forego embodying excerpts therefrom, other than that such driver must bring his car to a speed so reduced as to give him complete control over it. John Chaney did not do this, as the evidence indicates he was driving 20 to 25 miles per hour. Testimony of Mrs. Richards and Mr. King: he did not slow down when approaching the street intersection and the people in front of him on the side of the street.

"King says he saw complainant crossing the driveway bridge in a northeasterly direction, with head down. If King saw the woman, why did not Chaney? Chaney says he saw Fitzgerald who was beside the woman and blew his horn. Fitzgerald says the first he knew of Chaney's presence was when the car coming north turned east in front of the church, and after they passed on, Mrs. Oliphant started to take a step, and 'I started to take a step and this light flashed and I hollered "lookout, you gonna get hit", and just in an instant it had swept her up.'

"Evidence, bottom page 16,—'the car that hit her brushed me as I jumped back. I was standing about five and one-half feet from the foot bridge in the street. Is what I measured.' Evidence page 17. 'At the moment of the accident the flash of the car light attracted my attention and caused me to jump back.'

"On cross-examination, Fitzgerald says he did not see the car coming which struck Mrs. Oliphant. It might have been a foot or two away before it struck when the lights went on, though Chaney says he saw Fitzgerald and blew his horn. If this statement is true, and he ran so close to this man that he had to jump back and was brushed by Chaney's car, and Fitzgerald says he did and the witness Jackson corroborated this statement, then it seems to me a necessary conclusion that John Chaney was wilfully careless, for according to the witnesses there was nothing to prevent him from veering to the left or

from slowing up and thus have avoided the accident. The cars which came north had turned the corner going east before his car struck Mrs. Oliphant, and Chaney excuses himself for not turning his car with the statement that he was afraid he would run into the church, which was clear across the road, and the sketch in evidence shows that it was some distance east of the ditch on the east side of the road.

"John Chaney says he never saw Mrs. Oliphant, though on page 73 he says she turned around and started toward him. He tried to miss her and saw he could not. He believes 'she kinder run into me'.

"I am of the opinion that the evidence of John Chaney conclusively shows that he was not looking at what he was doing and so carelessly drove that car that he caused an accident which, with reasonable care on his part, would not have occurred.

"I am therefore of the opinion that complainant should recover damages. The evidence shows that she was seriously injured, both legs broken and the pelvis bone broken; suffered intensely for a long time, and was so bad off as to be, from suffering, non compos mentis for about a month and had to be held in bed. Testimony of Dr. Street: 'her condition was acute, complicated and necessitated blood transfusions and prolonged treatments'. At the end of 139 days in the hospital, was able to be moved to her home, with the left leg still in a cast and the wound discharging pus. Was discharged July 16, 1936. Returned to hospital July 30, 1936, for xrays and additional treatment. Returned again on August 13, September 23rd and October 15th, and on November 2, 1936, brought to the hospital having developed erysipelas of left leg from discharging sinus leading to diseased bone of left leg; and was confined at hospital this time thirteen days.

"The evidence indicates that the lady is permanently, partially incapacitated and will probably never be able to walk without crutches as there is no union of bone in the left leg; the left foot is dangling and it is problematical whether the left leg can ever be repaired and the right leg is in an imperfect condition.

"Dr. Street's evidence: The woman was injured in the early part of January 1936, a few weeks before reaching the age of 26. Her health was good and she was physically fit. With proper attention, medical and otherwise, she may regain such

use of her legs as to enable her to execute in a fair way, the duties and needs incident to the normal married woman in the ordinary walks of life. According to Dr. Street, if the now useless leg was bonegrafted and the operation successful, the woman would be about 50% as capable of work as she was before the accident.

"A study of cases of a somewhat similar nature discloses a trend of opinion and findings of the courts which indicates to me that $15,000.00 would be a reasonable, if not full compensation for the very serious injuries, internal suffering and partial permanent loss of the use of both legs, and possibly complete permanent loss of the use of the left leg, rendering it necessary for her to walk on crutches for the balance of her life.

"And $2000.00 for the cost of going to and from the hospital, hospital fees, medical attention and home nursing.

"For the reasons assigned and the law and evidence being in favor thereof, it is ordered, adjudged and decreed that the complainant herein, Mrs. Orval Oliphant, do have and recover judgment of and against the defendants, the Town of Lake Providence, Louisiana, and the Maryland Casualty Company, in solido, in the sum of $17,000.00, together with the costs of this suit."

"F. X. Ransdell,
"Judge ad Hoc."

We agree with the findings of the lower court in most respects, however, we will attempt to elaborate on its findings and point out wherein we disagree with its opinion.

The first defense set up is that they are not legally responsible, regardless of the allocation of fault, because John Chaney, the driver of the car, was not at the time of the accident an employee of the Town of Lake Providence. The car which he was driving was furnished for Town business only and John Chaney was driving it on his father's personal errand, without the authorization, permission or knowledge of the Town of Lake Providence.

The Town of Lake Providence is a municipal corporation, chartered under the laws of Louisiana. It owns and operates its own light and water department and has a separate department embracing these two utilities. Mr. E. J. Chaney is and has been for many years, the superintendent of the light and water department of the

Town and within that department and within the limits of his duties as superintendent and manager, has full power and authority to hire and fire employees at will and to buy the necessary supplies for his department and to generally operate and manage same. The Mayor of the Town, a witness for defendant, testified that Mr. Chaney had the authority of the Town to hire and fire any ordinary help he deemed necessary, but for any fixed employee, like an assistant, assistant engineer, or something of the kind, would have to get the approval of the Mayor and Board of Aldermen; that the Town purchased the car driven by John Chaney on the night of the accident and turned it over to Mr. Chaney, as manager of the light and water department, to be used by him; that he had the right to store the car wherever he wished when not using it, and that it was his understanding that he kept it at his home for his convenience.

Mr. Chaney had the authority, therefore, to delegate some of his duties to others from time to time and as the operation of his department might require and, insofar as his acts were authorized, they were the acts of the Town and for any negligence on the part of those to whom he delegated part of his duties which might cause damage to others, the Town was liable.

On the night of January 3, 1936, Mr. Chaney went home to eat supper. He used the Town car for that purpose. After supper, he asked his son, John, to go with him to the Providence Motor Company where he had left his personal car for certain repairs to be made on it. His purpose in taking his son with him was to drive one of the cars back. After arriving at the Motor Company's place of business, he entered into a discussion with the manager there relative to purchasing some tires for a truck also owned by the Town and used in his department. Not knowing just how long he would be delayed, he instructed his son, who was at that time in his eighteenth year, to drive the Town car back home and store it for the night.

Mr. Chaney testified he had been figuring with the Motor Company on some tires for the truck prior to this night and he did not recall whether he had it in his mind when he left home to see about the tires or not, but that he remained at the Motor Company's place of business for some time figuring with the manager about buying

the tires, which fell within his duties as superintendent and manager of the water and light department. Whatever might have been Mr. Chaney's intention when he left home in the Town car is not certain, but it is certain that as a result of the trip he transacted both personal business and business for the Town while at the Motor Company. He instructed his son to take the Town car back to the place where it was usually stored at night and where it was necessary for it to remain to be of service to the Town in case of fire at night. Whenever a fire occurred at night, it was the duty of Mr. Chaney to hasten to the water plant and see that the water pressure was sufficiently maintained for fire-fighting purposes.

It is certain that the car was not used for pleasure on the night of the accident. It was used on the trip to the Motor Company for a combined purpose, as we have heretofore stated, but when it was driven toward Mr. Chaney's home to be stored for the night, it was being operated solely on Town business and in the interest of the Town.

Therefore, we are of the opinion the only question to determine is whether or not Mr. Chaney had the authority to delegate that duty to his son. The lower court found that he did and we are of the opinion his finding is correct in that respect. He clearly had the authority to employ his son or anyone else to drive the car to its usual storage place, and when he instructed his son to drive it home, he became the agent of the Town for that purpose. We think it immaterial whether he agreed to pay him for his services or not. We quote from 18 R.C.L., par. 245, page 785: "Expressions may be found in the books in favor of the proposition that the employer should be held liable for the wrongful acts of persons whom the employee permits to assist him in the performance of the employer's service, the reason given being that the assistant is a mere instrumentality by which the employee performs his duty, and therefore that the assistant's act is the act of the employee. It accords with principle, however, to hold that the employer is not liable for the wrongful act of an assistant procured by the employee, unless the latter can be said to have been clothed with authority express or implied to employ help—in a word, the employee in engaging assistants must have acted within the scope of his employment. If the employee had authority to employ assistants, the employer will be deemed liable; otherwise he will not be compelled to respond. Such authority may be implied from the nature of the work to be performed, and also from the general course of conducting the business of the employer by the employee for so long a time that knowledge and consent on the part of the employer may be inferred. It is not necessary that a formal or express employment on behalf of the employer should exist, or that compensation should be paid by or expected from him. It has been held that the owner of a cart which the driver is trying to repair in a public street, after raising the pole into the air, is liable for the act of a stranger whom the driver calls to his assistance, in negligently causing the pole to fall on one looking into a shop window near by." Haluptzok v. Great Northern Railway Company, 55 Minn. 446, 57 N.W. 144, 26 L.R.A. 739; and 26 Cyc. Law & Proc., page 1521.

The next defense urged is that even though the court should find that the Town bought the car and furnished it to E. J. Chaney for personal use, as well as for Town purpose, and that the Town gave Chaney the authority to employ someone else to operate the car on his personal business and bind the Town for the consequences, appellant would not be liable for the reason that such an act would be ultra vires the Town.

Since we have found that the car was not used for personal business alone at any time on the night of the accident and that at the time of the accident it was being used in the interest of the Town only, there is no need to discuss this defense.

The third defense urged in brief is there was no negligence on the part of John Chaney, the driver of the Town car. The lower court found John Chaney to have been grossly negligent and the testimony abundantly supports its finding in that respect. Since we have quoted above the opinion of the lower court, it is unnecessary to here again quote its finding of fact as to the negligence of John Chaney. It is certain, to our mind, that his negligence was a proximate cause of the accident, if not the sole cause.

Defendant complains of the following statement made by the lower court in its opinion: "This discrepancy (whether plaintiff was crossing the street at an in-

tersection or below the intersection) is hard to account for. Though as to the legal effect in the case, it is immaterial whether complainant was struck at the foot bridge or driveway bridge."

We realize the law requires one driving a car on a thickly populated street to use more care at an intersection than when traveling between intersections, but we interpret the statement of the lower court to mean that the negligence of defendant's driver in the case at bar was sufficient to make him liable, regardless of whether plaintiff was crossing at an intersection or not. We are of the same opinion.

The fourth defense urged in brief is the contributory negligence of plaintiff. This defense is not tenable here for the reason contributory negligence was not pleaded by defendant. We have quoted. the material parts of defendant's answer and a reading of it fails to disclose a plea of contributory negligence. Contributory negligence must be specially pleaded and proven. In pleading contributory negligence, it is not sufficient to aver the negligence of plaintiff to be the sole cause of the accident. Gauvereau v. Checker Cab Company, 14 La.App. 448, 131 So. 590; Quatray v. Wicker, 16 La.App. 515, 134 So. 313; Chanson v. M. L. & T. R. & S. S. Company, 18 La.App. 602, 136 So. 647; McDonald v. Stellwagon, La.App., 140 So. 133; Stokes v. Big Chain Stores, La.App., 159 So. 125.

Contributory negligence is an affirmative defense in the nature of a confession and avoidance, which must be specially pleaded to authorize reception of evidence thereon. To make out a prima facie tort case, plaintiff need only allege and prove that injury was due to or caused by defendant's negligence, and is not required to allege or prove his own freedom from contributory negligence. Saks v. Eichel, La.App., 167 So. 464; Buechner v. City of New Orleans, 112 La. 599, 36 So. 603, 66 L.R.A. 334, 104 Am.St.Rep. 455.

The pleadings in this case cannot be held to have been broadened by the testimony offered to show negligence on the part of plaintiff for the reason the evidence was admissible, under the allegations of negligence which defendant alleges and contends were the sole and proximate cause of the accident. The plea of contributory negligence is absolutely negatived by defendant's pleadings. They alleged defendant was free from any negligence and, for contributory negligence to be used as a bar, there must be negligence on the part of the defendant.

It therefore follows that · if John Chaney, the .driver of defendant's car, is shown by the evidence to have been guilty of negligence which was a proximate cause of the accident, then plaintiff, under the pleadings,. has made out her case and is entitled to recover. To our mind, the evidence discloses that fact.

The record discloses that on December 7, 1935, public liability insurance was taken out on the said car made payable to the, Town, in the sum of $50,000 for the death or bodily injury of one person in an accident and $100,000 for the death and injury of two or more persons. The policy states the car was to be used for "pleasure and business". At the time of the accident the policy was in full force and effect. Therefore the defendant insurer who issued the policy is liable, in solido, with the Town.

The remaining question is ̇the quantum of damages which plaintiff is entitled to recover. The opinion of the lower court goes into detail as to her injuries and suffering. The record, we think, shows her injuries and suffering to have been even greater than is depicted by the lower court. We are of the opinion the award of $15,-000 for permanent injuries, pain and suffering, is adequate and just. The award of $2,000 for medical, hospital, doctors' bills, etc., will have to be reversed. Plaintiff is a married woman and her husband alone, as head and master of the community, can sue and recover these items. Plaintiff was not entitled to sue or recover on these items. Labat v. Gaerthner Realty Company, La.App., 146 So. 69, and numerous decisions cited therein.

It therefore follows that the judgment of the lower court is amended by striking therefrom the award of $2,000 for medical and doctors' bills, etc., and, as amended, the judgment is affirmed; defendant to pay the costs of the lower court and plaintiff the costs of appeal.

TALIAFERRO, J., dissents.

## On Rehearing.

HAMITER, Judge.

This rehearing was granted for the purpose of permitting further consideration of the cause. The issues presented are well stated in our original opinion.

On the first hearing, we found that John Chaney, the driver of the car that struck plaintiff, was grossly negligent. This was the view of the trial court, and it is still entertained by us. Furthermore, we then held that such driver was acting as an agent of the defendant, Town of Lake Providence, and that his principal was responsible for the tort committed and damages occasioned by him. It was also our holding that the case presented no question of negligence on the part of the plaintiff, in as much as contributory negligence was not specifically and properly pleaded by defendants; and this position has been criticized by defense counsel in their application for a rehearing and the supporting briefs.

The district court's judgment, which awarded plaintiff damages against said town and its insurer, was amended by us to the extent of providing a reduction in the quantum, and, as amended, it was affirmed.

After further considering the case, we are of the opinion that the said John Chaney had the last clear chance to avoid the accident; and that, even if the negligence of plaintiff was properly pleaded by defendants and should be considered; his negligence proximately caused the mishap and the resulting injuries, while her negligence was only the remote cause. This conclusion is founded on the entire evidence, and particularly on the testimony of W. H. King, a witness for defendants. The witness King states that he was driving an automobile and following Chaney at a distance of from 150 to 200 feet. Chaney's car traveled 18 or 20 miles an hour through the intersection of Davis and Second streets, and struck plaintiff momentarily after its brakes were applied. He, King, observed both the plaintiff and her companion, Mr. Fitzgerald, while they walked over the car bridge and continued walking diagonally across the street; and he knew of nothing to prevent Chaney's seeing them. There was no vehicle or other object between the pedestrians and the cars of Chaney and King. Plaintiff was "looking down in a bended motion", and did not stop until hit.

The accident did not occur as plaintiff stepped from the bridge. She had proceeded at least eight feet into the street when struck. This distance is shown by King's testimony and also by the fact that an automobile was parked on the west side of the street a few feet south of the bridge, which served to prevent Chaney's driving near the western edge.

There is evidence in the record tending to show that plaintiff and Fitzgerald stopped after entering the street, and that as Chaney's car approached she stepped suddenly in front of it. This conflicts with the testimony of King; and because of the location and the unobstructed view that he enjoyed at the time, his version is accepted.

As King, who was following Chaney, observed the unfortunate woman inattentively moving toward, into and in the street, Chaney also could have seen her in time to avert the accident if he had been keeping a proper lookout. The duty owed by Chaney was not discharged, and under the authority of Jackson v. Cook, 189 La 860, 181 So. 195, responsibility for the collision and its consequences must be charged to him.

After reaching the conclusion, on the rehearing, that John Chaney's negligent driving was responsible for the accident, we submitted the following question to the Supreme Court and asked for instructions: "Assuming that the driver of the automobile, the superintendent's son, had the last clear chance to avoid the accident, but failed in his duty to do so, under the facts and circumstances above stated is the Town of Lake Providence legally responsible for the damages occasioned by his negligence?"

In its decision of date March 6, 1939, rendered by a divided court, the question was answered in the affirmative.

The Supreme Court granted a rehearing, and, again by a divided court, reversed its original holding and finally held that the "Town of Lake Providence is not subject to liability for any injury done to the plaintiff by negligence on the part of the driver of the automobile, * * *." 192 So. 95, 104.

It must now be determined whether or not there is liability on the part of the

town's insurer, the Maryland Casualty Company.

Plaintiff, in her petition, averred as follows: "Your petitioner has not seen the said insurance policy, but she avers that it is a contract between the said Maryland Casualty Company and the said Town of Lake Providence, under which the said Maryland Casualty Company agrees to pay any judgment which may be rendered against the said Town of Lake Providence for damages for injuries inflicted upon any person through the use of said automobile. She avers that the said insurance policy was in full force and effect at the time she was injured as hereinabove set out, and she avers that she has the right to make the said Maryland Casualty Company a party defendant in solido in this suit."

The answer of the insurer admitted the issuance of a policy insuring said town as to public liability arising out of the ownership and operation of the automobile that injured plaintiff. It averred, however, as is shown in detail in our original opinion, that under the terms, limitations and conditions of the contract it is in no way legally liable unto plaintiff.

After the joining of issue, but before trial, plaintiff petitioned the court for an order directing the Town of Lake Providence to produce the policy in open court. She averred that, "she expects to prove by the said policy that under its terms the said Maryland Casualty Company made itself responsible for any damages inflicted upon any person through the use and operation of the said automobile without any conditions or limitations upon said liability." It was produced as requested and ordered.

During the course of the trial, plaintiff offered the policy in evidence. The insurer objected to the introduction "for the reason that the document offered enlarges the pleadings", and in connection with the objection it asked that if the offering be admitted, such admission be restricted to the extent that "it does insure or purports to insure the defendant Town of Lake Providence." The court permitted the policy's introduction with the restriction or limitation urged by the insurer. In our opinion, there was error in this ruling. Under the averments of the insurer's answer and the allegations made by plaintiff in her petition to require a production of the contract, said policy, which is in the record, should have been admitted for all purposes.

The named assured in the contract is "Town of Lake Providence, and/or the Mayor and Board of Aldermen of the Town of Lake Providence, Louisiana". Also recited therein is that the automobile covered will be used for pleasure and business purposes, and that the maximum legal liability for bodily injury or death for one person is $50,000. In the paragraph marked "Additional Interests Covered", it is stated: "The insurance provided by this policy is hereby made available, in the same manner and under the same conditions as it is available to the named assured, to any person operating, and/or to any other person while riding in, and/or to any other person, firm or corporation legally responsible for the operation of, any of the automobiles described in the statements, provided the use and operation thereof are with the permission of the named assured, * * *."

Although the Supreme Court found and held that John Chaney, at the time of the accident, was not performing any duty that his father was employed to perform, and was merely rendering his father a service while the latter was engaged elsewhere, it appears certain that the machine was then being operated and used with the permission of the named assured within the meaning and intendment of the above quoted policy provisions. The driver was returning the automobile to the place where it was customarily kept at night, and the father, who had ordered such return, was permitted the use of the car as he desired and possessed the right to enlist for any ordinary work the services of persons whenever needed.

Our views with reference to the matter of quantum are correctly stated in our original opinion.

For the above reasons, it is now ordered, adjudged and decreed that the judgment rendered by the trial court against the Maryland Casualty Company is amended by striking therefrom the award of $2,000 for medical, hospital and doctors' expenses, and, as amended, it is affirmed; and the judgment rendered against the Town of Lake Providence is reversed and set aside, and plaintiff's demands as against that defendant are rejected. The defendant Maryland Casualty Company shall pay the costs of both courts.

TALIAFERRO, J., dissents and files written reasons therefor.

TALIAFERRO, Judge (dissenting).

I respectively dissent from the majority opinion in this case in two material respects, to-wit:

(1) On the finding of fact that plaintiff and her escort, Mr. Fitzgerald, did not stop after entering the street for the purpose of crossing over; and

(2) Awarding a recovery herein, notwithstanding plaintiff's own gross negligence, by applying the doctrine of the last clear chance.

As concerns my dissent on the question of fact mentioned, the testimony of plaintiff, herself, and of Mr. Fitzgerald, a witness for her, should be controlling over that of the witness, King. The testimony of these two parties is unequivocal on the subject. We here quote pertinent parts of it given by plaintiff:

"Q. What, if anything, did you do while you were crossing the bridge or as you stepped into the street? A. We turned there and were going east; crossed the bridge, stopped and waited for two cars to pass on down Davis Street. * * *

"Q. What were you doing when you were hit? A. I was standing waiting for those other cars to get by.

"Q. Where was Mr. Fitzgerald when you were hit? A. He was across the bridge behind me; he was standing just behind me.

"Q. Did you see or know that this car was going to hit you? A. No, sir.

"Q. What, if anything, did Mr. Fitzgerald do just at the time or about the time you were hit? A. I remember he holloed; that's all I remember. * * *

"Q. You saw them coming and stopped to let them pass? A. Yes, sir.

"Q. Mrs. Oliphant, isn't this what happened—you saw those cars coming and you stopped, naturally, to let them pass, and as soon as they passed you stepped out and Mr. Fitzgerald holloed to look out, and then the car hit you? A. I didn't step out; I was standing practically still."

While a patient in a hospital in Vicksburg, Mississippi, she signed a statement covering the immediate facts of the accident, in which she said:

"There is a narrow wooden bridge there, and we had walked across it to the end when we saw two cars going toward town. We stopped at the end of the bridge and waited for them to pass, and then I imagine I made one step, when Mr. Fitzgerald holloed to me and told me to look out for the car. * * *

"I never did see the car that hit me, as I was watching the other two."

Mr. Fitzgerald gave the following testimony:

"Q. You say you looked to the north? A. Yes, sir.

"Q. You didn't see anything? A. Well, I saw the two cars coming from the south.

"Q. What did you do? A. We stopped and waited until they passed; one was about, I suppose, thirty feet behind the other.

"Q. Which way did those cars pass? A. They came north until they got to the corner, and they turned east down the street in front of the church house, and after they passed on, she started to take a step, made one step, and I started to take a step when this light flashed and I holloed 'Look out, you're going to get hit.' In just an instant it had swept her up, ran against her. * * *

"Q. You both looked out and saw those two cars coming? A. Yes.

"Q. And then as soon as those two cars passed, you and Mrs. Oliphant started out into the street? A. Certainly, started to cross."

In article five (5) of the petition, it is averred that plaintiff, after going one or two steps into the street "stopped to permit two cars, going north on Davis Street, to pass."

Plaintiff and Fitzgerald each testified that as they entered the street they looked both ways for traffic and observed only the two cars on the opposite side of the street, approaching from their right; that they stopped to allow these cars to pass before proceeding further; that they did not again look to their left to ascertain if any cars were approaching. It is certain when struck and for an appreciable time prior, plaintiff was looking only toward the east, the direction she purposed to travel. I am satisfied that as soon as the two cars referred to passed, she, as Fitzgerald says, and as she in the written statement, said, im-

mediately stepped forward. It was then she was struck by the right fender of the Chaney car. Had she stood still for only an additional split second, she would not have been injured.

Young Chaney never saw plaintiff at all until he struck her. He did see Fitzgerald. Plaintiff was at least ten feet into the street and not in the intersection as she contends. The Chaney car was following a course that led it close to but surely beyond her.

Having attempted to cross the street at a point other than an intersection, the strictest care should have been observed by plaintiff; more so than is required at an intersection. She should have observed the Chaney car, with lights brightly burning, at her left. She would have done so had she slightly looked in that direction.

It is my belief that the doctrine of the last clear chance does not here apply, because plaintiff was standing still near the center of her side of the street and would not have been struck had she held her ground for only a fraction of a second longer. She left a place of relative safety and stepped into the path of the Chaney car when it was impossible for the driver to avert striking her. To apply the doctrine to such facts throws upon the motorist entire responsibility for averting accidents in such a case. Plaintiff's step forward was the immediate, direct and proximate cause of the accident.